**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

MICHAEL HICKMAN, an individual, on his own )
behalf and on behalf of all others similarly situated, )
            )   Case No. 09-cv-5090
     Plaintiff,         )
v.                 )
                )
WELLS FARGO BANK N.A.,       )   Complaint and Jury Demand
                )
     Defendant.        )

## CLASS ACTION COMPLAINT

    Michael Hickman ("Hickman" or "Plaintiff"), individually and on behalf of all others

similarly situated, for his complaint against Defendant Wells Fargo Bank N.A. ("Wells Fargo" or

"Defendant"), alleges as follows upon information and belief, based upon, *inter alia,*

investigation conducted by and through his attorneys, except as to those allegations pertaining to

Plaintiff and his counsel personally, which are alleged upon personal knowledge.

### Introduction

    1.   This is a case about Defendant Wells Fargo's illegal reduction of credit limits on

home equity lines of credit ("HELOCs") across the country in a transparent and illegal attempt to

limit its exposure to the troubled United States housing market by breaking its promises to

homeowners who obtained credit from Defendant. Defendant originated and owns billions of

dollars of prime and subprime mortgages, including the HELOCs at issue in this Complaint.

    2.   Plaintiff Hickman, and each member of the purported class, had a HELOC for

which Defendant reduced the available credit in a manner that was both illegal and grossly

unfair. As a result of Defendant's wrongful actions, Plaintiff brings this class action on behalf of

himself and the putative class for declaratory relief, actual damages, and attorneys' fees under

the Truth-in-Lending Act (15 U.S.C. § 1640(a)), damages for breach of contract, damages for

breach of the implied covenant of good faith and fair dealing, damages, injunctive and equitable

relief under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1

*et seq.* (2000)), and equitable relief under principles of common law.

## Nature of the Claim

3.      As early as October 2008, Defendant began to send form letters to thousands of

its HELOC customers, summarily lowering their lines of credit. Defendant's letter to Plaintiff

specifically stated:

> Wells Fargo has recently reviewed your Home Equity Account referenced above
> (your "Account"). According to your Home Equity Line of Credit Agreement, if
> the value of the property securing the Account significantly declines, Wells Fargo
> may lower the credit limit on your Account.
>
> Based on this review, we are lowering the credit limit of your Account to
> $31,039.83 *due to a substantial decline in the value of the property securing the
> Account.*

(*See* October 14, 2008 "Notice of HELOC Reduction" letter, a true and accurate copy of which is

attached as Exhibit A). Defendant did not perform any type of individualized assessment of its

customers' home values to determine depreciation, but rather, on information and belief,

Defendant determined property values through dubious automated formulas, commonly known

as Automated Valuation Models ("AVM"), with unreliable or inaccurate analyses designed to

reach a predetermined result. In fact, Defendant sent this letter and reduced its limit on HELOCs

to many homeowners, including Plaintiff, whose home value had not significantly declined.

4.      Defendant's systematic mass reduction of HELOC limits was illegal. While

federal law permits Defendant to reduce a credit limit if the individual property securing the

HELOC loses a significant amount of its value, federal law prohibits a lender from reducing the

credit limit without first assessing the value of the specific property or otherwise having a sound

basis for suspending or reducing the credit limit. Additionally, federal regulators have warned

financial institutions that it would violate federal law to reduce the credit limits of all HELOC

accounts in a geographic area in which real estate values are generally declining without

assessing the value of the collateral that individually secures each affected HELOC account.

*Office of Thrift Supervision: Guidance on Home Equity Lines of Credit*, OTS 08 038 (Aug. 26,

2008).

5.      The letter sent by Wells Fargo to Plaintiff and the other class members indicated

2

that the original credit limits could be reinstated if, in fact, the reason provided by Wells Fargo for the reduction "no longer exists or is in error." However, despite federal regulations requiring that notice of a credit limit reduction be "specific" as to the actions taken by the lender, the letter did not provide HELOC customers with the most important information: the value of their respective homes (as determined by Wells Fargo), how that property value was determined, or even what property value would be required to reinstate the full credit limit. Thus, the notice of credit limit reduction provided by Wells Fargo failed to include sufficient information for a customer to determine whether he or she should challenge the credit reduction and spend the time and resources to obtain and pay for an appraisal.

6.      In addition to Defendant's mass HELOC reductions being illegal, they are unconscionable in light of Defendant's receipt of billions of dollars in taxpayer funds. Congress passed the Emergency Economic Stabilization Act of 2008, Pub.L. No. 110-343, on October 3, 2008. As part of this law, Defendant obtained, on information and belief, approximately $25 billion from an unprecedented $700 billion bailout funded by American taxpayers. The rationale advanced for the bailout was that banks like Defendant needed liquidity in the face of the worsening subprime mortgage crisis and that such liquidity would be necessary to ensure the continued flow of credit to consumers. On the contrary, Defendant has deprived its customers of crucial affordable consumer credit at a critical time, even though its customers continue to meet their mortgage obligations in this faltering economy. Defendant's conduct is especially troubling given the significant role it played in the subprime mortgage fiasco and the recent turbulence in the housing market in particular.

7.      Defendant's actions with respect to Plaintiff were particularly unwarranted and insulting in light of the fact that, on January 26, 2009, approximately three months *after* Wells Fargo slashed his HELOC credit limit due to a purported decrease in the value of his home, Hickman received an unsolicited notice indicating that his Wells Fargo Visa credit card spending limit had been *increased* 25% from $20,000 to $24,000.

3

## Parties

8.     **Plaintiff Michael Hickman:**  Michael Hickman is a resident of Westmont, Illinois.  Starting in approximately May 2006, Hickman had a HELOC from Defendant in the amount of $75,000 secured by his personal residence.  On or about October 14, 2008, Defendant sent Hickman a letter indicating that Wells Fargo had reduced the HELOC to $31,039.83, his approximate outstanding balance at the time.  (Ex. A).

9.     **Defendant Wells Fargo:**  Wells Fargo Bank, N.A. is a national banking association, chartered in Sioux Falls, South Dakota, with its main offices at 420 Montgomery Street, San Francisco, California 94163.  Wells Fargo is one of the country's largest banks and has offices throughout the country.

## Jurisdiction and Venue

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendant.  On information and belief, the aggregate of these claims exceeds the sum or value of $5,000,000.

11.     Wells Fargo is a national banking association whose main offices are in California and is considered a citizen of California under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).  Plaintiff is a citizen of Illinois.

12.     This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises in significant part under Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, 15 U.S.C. § 1640(e), and 12 C.F.R. § 226.5(b).  Supplemental jurisdiction over Plaintiff's state and common law claims is proper under 28 U.S.C. §1367.

13.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(2), as Plaintiff's property is located in this District and a substantial part of the events, circumstances, and/or omissions giving rise to these claims occurred in this District.  Venus is also proper before this Court under 28 U.S.C. § 1391(c).

## Allegations as to Plaintiff's Individual Claims

14.     Defendant and Hickman entered into a HELOC agreement in May 2006. A true and accurate copy of the HELOC agreement is attached as Exhibit B. Under the terms of the HELOC, Defendant provided Hickman a $75,000 line of credit. Hickman's HELOC was secured by a mortgage on his primary residence, which is located in Illinois.

15.     On October 14, 2008, Defendant mailed Hickman a letter indicating that Defendant had reduced Hickman's credit limit by more than $40,000, or by nearly 60%, – to just over his balance at the time. The letter stated that Defendant was lowering the credit limit "due to a substantial decline in the value of the property securing the Account." (Ex. A).

16.     Hickman contacted Wells Fargo and requested the basis for Wells Fargo's decision. On October 20, 2008, Wells Fargo responded that the "Valuation" used was obtained via an AVM, that the date of the valuation was May 1, 2008, and that the property value at that time was $531,000. (*See* October 20, 2008 "Letter to M. Hickman," a true and accurate copy of which is attached as Exhibit C.)

17.     Hickman's HELOC with Defendant was his primary line of credit. Defendant's reduction of the credit limit on Hickman's HELOC denied Hickman access to credit and dramatically increased the ratio of credit Hickman used to the amount of credit Hickman had available to him. In turn, on information and belief, Defendant's acts drove up his Credit Utilization Rate ("CUR"), a major component of his credit rating, thereby damaging Hickman's credit rating and increasing the cost of credit to him. Additionally, Wells Fargo continued to charge Hickman a $75 non-refundable Annual Fee even though Hickman has been denied access to his full bargained-for line of credit.

## Class Certification Allegations

18.     Plaintiff seeks certification of a class under both Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

19.     **Definition of the Class:** Pursuant to F.R.C.P. 23, Hickman brings this Complaint against Defendant on behalf of a class (the "Class") of all persons nationwide:

(a)     who had a HELOC with Defendant; and

(b)     whose HELOC was reduced or frozen by the Defendant; and

(c)     who received a letter from Defendant which stated that the HELOCs were reduced "due to a substantial decline in the value of the property securing the Account," or words to that effect.

Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

20.     **Numerosity:** The exact number of the members of the Class is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. Defendant sent its generic credit line reduction letters to thousands of mortgagors, and a substantial percentage of the recipients of these letters fall into the definition of the Class. Class members can be easily identified through Defendant's records and public records.

21.     **Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a)     What were Defendant's criteria for reducing the credit limits on its HELOCs;

(b)     What were Defendant's methods for valuing the subject properties securing the HELOCs;

(c)     Whether Defendant's reduction of the credit limits of the HELOCs, including the notice provided with respect to such reduction, violated the Truth-in-Lending Act and related regulations;

(d)     Whether Defendant's reduction of the credit limits breached the terms of its HELOC agreements with Class members;

(e)     Whether Defendant's reduction of the credit limits on its HELOCs, including the notice provided with respect to such reduction, violated the Illinois Consumer Fraud Act;

(f)     Whether Defendant's reduction of the credit limits on its HELOCs was unfair;

(g)     Whether Defendant gave proper notice to customers that their HELOCs were being reduced;

(h)     Whether Defendant's actions in, among other things, requiring customers to obtain and pay upfront for property appraisals violated the implied covenant of good faith and fair dealing; and

(i)     Whether Plaintiff and the Class are entitled to relief, and the nature of such relief.

22.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, as Plaintiff and other Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to Plaintiff and the public.

23.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

24.     **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action

presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

25.      **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of the Defendant challenged herein apply and affect members of the Class, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**Count I: Declaratory Relief Under TILA and Regulation Z**
**(on behalf of Hickman and the Class)**

26.      Plaintiff incorporates Paragraphs 1 through 25 as if fully set forth herein.

27.      The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) prohibit Defendant from changing any of the terms of a mortgage or HELOC – including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). There is a relevant exception under TILA and Regulation Z which permits Defendant to reduce the credit limits on its HELOCs for "any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

28.      TILA and Regulation Z prohibit Wells Fargo from reducing the credit limits or freezing its HELOCs unless the value of the home securing the credit line has actually declined significantly. The Federal Reserve Board's Official Staff Commentary to Regulation Z defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value . . . ) is reduced by fifty percent." The Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur." On August 26,

8

2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account." *Office of Thrift Supervision: Guidance on Home Equity Lines of Credit*, OTS 08 038 (Aug. 26, 2008).

29.     Before reducing the limits of its HELOCs, Defendant had an obligation to confirm that the value of each specific subject property had actually declined significantly.

30.     Wells Fargo violated TILA and Regulation Z by reducing Hickman's HELOC limit, and those of the other Class members, in the absence of any "significant decline" in the value of the subject properties.  On information and belief, neither Hickman's property nor the property of the Class members has significantly declined in value.

31.     Rather, upon information and belief, Defendant knowingly and intentionally used a variety of dubious formulas and fundamentally unreliable data (including the general decline of property values in broad geographic areas and other mathematical inputs) to value its customers' homes in order to justify blanket reductions on its HELOC limits.  Upon information and belief, the methodology used with respect to Defendant's AVM HELOC modeling is inaccurate and unsubstantiated, making its use unfair, deceptive, and readily subject to manipulation.

32.     On information and belief, Wells Fargo or its agents acting under Wells Fargo's direction and control, failed to, among other acts or omissions: (a) disclose the reasoning and basis behind the use of the AVM-derived property value; (b) disclose the value necessary to reinstate the HELOCs; (c) validate their AVMs on a periodic basis to mitigate the potential valuation uncertainty; (d) properly document the AVM's analysis, assumptions, and conclusions; (e) appropriately back-test representative samples of the AVM's valuations against market data on actual sales; (f) account fairly for improvements, property type, or geographic comparables; and/or (g) take other necessary steps to reasonably verify the accuracy of the AVM valuations.

33.     Additionally, Wells Fargo further violated TILA and Regulation Z by failing to reduce credit limits only during a period of time where there had been a significant decline in

property values. Hickman's credit line was reduced on October 14, 2008. However, when Hickman asked for more details about such action, Wells Fargo stated that the AVM-generated valuation was conducted on May 1, 2008 – over five months earlier. Thus, even if Hickman's property did experience a significant decline in value (which it did not), Wells Fargo lacked any factual basis to conclude that any such significant decline was still in effect during the period in which it reduced the credit limit – over five months later and beyond. Upon information and belief, Wells Fargo reduced the credit limits of the Class members several months after the AVM valuations were conducted and, therefore, no longer during the period when any purported "significant" decline was in effect.

34. Defendant's failure to specifically value the property of each Class member, failure to use a reliable valuation method, and failure to reduce credit limits only upon a justified finding of, and only during the period of, a "significant decline" in property value constitute violations of TILA and Regulation Z.

35. The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction of HELOC credit limits and improper property valuation techniques violate TILA and Regulation Z.

36. Hickman, on his own behalf and on behalf of the other Class members, seeks a declaratory judgment under 28 U.S.C. § 2201 that Wells Fargo's mass reduction of HELOC credit limits in connection with the notice letters sent to Class members violates TILA and Regulation Z.

### Count II: Violation of TILA and Regulation Z
### (on behalf of Hickman and the Class)

37. Plaintiff incorporates Paragraphs 1 through 36 as if fully set forth herein.

38. Defendant reduced the credit limit for Hickman and other Class members' HELOCs. Contrary to Defendant's explanation, the homes securing the HELOCs for Hickman and other Class members did not significantly decline in value.

39.     Defendant's reduction of the credit limit for Hickman and other Class members' HELOCs violated TILA and Regulation Z.

40.     Wells Fargo knowingly lacked a sufficient factual basis for reducing the credit limits for Plaintiff and the Class members.  Wells Fargo lacked a sound factual basis for concluding the homes securing the HELOCs for Hickman and other Class members had declined in value significantly enough to support reducing the credit.  Additionally, Wells Fargo lacked a factual basis for finding a significant decline in property value during the periods in which the credit limits were reduced.  Wells Fargo also used improper formulas and relied on fundamentally unreliable data to value its mortgagors' homes in order to justify blanket reductions on its HELOC limits.

41.     Wells Fargo's violations of TILA and Regulation Z damaged Hickman and the other Class members.  These damages occurred in the form of denial of the full use of the bargained-for benefit of the HELOCs, appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

42.     Hickman, on his own behalf and on behalf of the other Class members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fee under 15 U.S.C. § 1640(a)(3), in an amount to be determined at trial.

### Count III:  Declaratory Relief Under TILA and Regulation Z
### (on behalf of Hickman and the Class)

43.     Plaintiff incorporates Paragraphs 1-42 as if fully set forth herein.

44.     Regulation Z requires that, where a creditor reduces a credit line or prohibits additional extensions of the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected.  The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action." Regulation Z, 12 C.F.R. § 226.9(c)(3).

45.     In violation of Regulation Z, Wells Fargo notified Hickman and other Class

members of the decline in their respective credit limits by letter that did not contain specific reasons for the credit reduction action taken.

46.     The notice provided to Hickman and other Class members indicates that a customer may contact Wells Fargo to request reinstatement of the original credit limit if the customer "believe[s] the reason stated [in the letter] no longer exists or is in error."

47.     However, the notices fail to provide HELOC customers with enough information to determine whether they should challenge the credit limit reduction by spending time and resources to obtain an appraisal. Despite the fact that federal law requires a "significant decline in collateral value" prior to reducing a credit limit, Defendant's notices are devoid of any specific reasoning or explanation other than that the customer's credit limit is being reduced "due to a substantial decline in the value of the property securing the Account."

48.     Wells Fargo's notices to its customers do not disclose (a) the value of the subject property, as determined by Defendant; (b) how Defendant determines (or even defines) "substantial decline in value;" (c) how Defendant computes the value of the subject properties; (d) the methods or factors used by its AVM models; (e) the actual threshold property value that Defendant requires in order to reinstate or unfreeze the HELOCs; and (f) other necessary and material information. Instead, the notice requires customers to participate in an undefined and unfair appeals process wherein Defendant refuses to make clear the values needed for reinstatement and refuses to use standards permitted and/or required by Regulation Z.

49.     The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether the Defendant's mass reduction of credit limits, and the notice it provides with respect thereto, violates TILA and Regulation Z.

50.     Hickman, on his own behalf and on behalf of the other Class members, seeks a declaratory judgment under 28 U.S.C. § 2201 that Wells Fargo's mass reduction of HELOC credit limits in connection with the letter notice violates TILA and Regulation Z.

## Count IV: Violation of TILA and Regulation Z
## (on behalf of Hickman and the Notice Subclass)

51.     Plaintiff incorporates Paragraphs 1-50 as if fully set forth herein.

52.     Regulation Z requires that, where a creditor reduces a credit line or prohibits additional extensions of the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected. The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action." Regulation Z, 12 C.F.R. § 226.9(c)(3).

53.     Wells Fargo notified Hickman and other Class members of the decline in their respective credit limits by letter that did not contain specific reasons for the action taken in violation of Regulation Z.

54.     Wells Fargo's notices to its customers do not disclose (a) the value of the subject property, as determined by Defendant; (b) how Defendant determines (or even defines) "substantial decline in value;" (c) how Defendant computes the value of the subject properties; (d) the methods or factors used by its AVM models; (e) the actual threshold property value that Wells Fargo requires in order to reinstate or unfreeze the HELOCs; and (f) other necessary and material information. Instead, the notice requires customers to participate in an undefined and unfair appeals process wherein Defendant refuses to make clear the values needed for reinstatement and refuses to use standards permitted and/or required by Regulation Z.

55.     Defendants' violation of TILA and Regulation Z damaged Hickman and the other Class members. These damages occurred in the form of being denied the full use of their bargained-for credit limits, appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

56.     Hickman, on his own behalf and on behalf of the other Class members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), in an amount to be determined at trial.

## Count V:  Declaratory Relief Under TILA and Regulation Z
## (on behalf of Hickman and the Class)

57.     Plaintiff incorporates Paragraphs 1-56 as if fully set forth herein.

58.     Wells Fargo further acted in violation of TILA and Regulation Z by requiring
Hickman and the other Class members to obtain and pay upfront for property appraisals as part
of its "appeals process." TILA and Regulation Z provide that the burden of reinstating HELOC
accounts and credit limits rests with the lender. *See* Commentary to 12 C.F.R.
226.5b(f)(3)(vi)(2).  Although TILA and Regulation Z permit lenders such as Wells Fargo to
push the burden of seeking reimbursement onto HELOC borrowers, TILA and Regulation Z
dictate that once a borrower requests reinstatement, the lender must then investigate the
circumstances that purportedly warranted suspension or reduction. *See* Commentary to 12
C.F.R. 226.5b(f)(3)(vi)(4).  Only after the lender investigates may the lender charge the borrower
bona fide and reasonable costs and appraisal fees. *See* Commentary to 12 C.F.R.
226.5b(f)(3)(vi)(3).

59.     On information and belief, Wells Fargo intentionally shifted onto its customers
the burden of obtaining and paying *upfront* for a property appraisal in an effort to discourage
customers from seeking reinstatement of their original credit limits.  This illegal burden shift was
particularly successful in discouraging customers from seeking reinstatement when combined
with Wells Fargo's failure to provide specific information to Plaintiff and Class members that
would have helped them assess the utility of obtaining an appraisal and seeking reinstatement.

60.     The Class and Defendant have adverse legal interests, and there is a substantial
controversy between the Class and Defendant of sufficient immediacy and reality to warrant the
issuance of a declaratory judgment as to whether Defendant's mass reduction of credit limits and
shifting of the reinstatement burden violates TILA and Regulation Z.

61.     Hickman, on his own behalf and on behalf of the other Class members, seeks a
declaratory judgment under 28 U.S.C. § 2201 that Defendant's mass reduction of HELOC credit
limits and shifting of the burden of obtaining and paying upfront for an appraisal for
reinstatement violates TILA and Regulation Z.

14

## Count VI: Violation of TILA and Regulation Z
### (on behalf of Hickman and the Class)

62.     Plaintiff incorporates Paragraphs 1-61 as if fully set forth herein.

63.     TILA and Regulation Z require that, upon a customer's attempt to seek reinstatement of his or her credit limit following a reduction by the lender, the lender must investigate the basis for its credit limit reduction and may then seek reimbursement from the customer for any bona fide fees and costs relating to that investigation.

64.     Wells Fargo acted in violation of TILA and Regulation Z by requiring Hickman and the other Class members to obtain and pay for property appraisals upfront in order to seek reinstatement as part of its "appeals process."

65.     Defendant's violation of TILA and Regulation Z damaged Hickman and the other Class members. These damages occurred in the form of being denied the full use of their bargained-for credit limits, appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

66.     Hickman, on his own behalf and on behalf of the other Class members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), in an amount to be determined at trial.

## Count VII: Breach of Contract
### (on behalf of Hickman and the Class)

67.     Plaintiff incorporates Paragraphs 1-66 as if fully set forth herein.

68.     Hickman and the other Class members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the Class members and Defendant.

69.     The Defendant's HELOC Agreements contain a term that purports to permit it discretion to reduce the credit limit if "(c) the value of the [property securing the HELOC] declines significantly below [the property's] original appraised value." Defendant drafted the HELOCs, and the phrase "declines significantly" should be construed against Defendant. (Ex. B).

70. Hickman and the other Class members performed in full under their HELOC agreements with Defendant. They made the payments due to Defendant under the HELOCs and otherwise complied with the terms of the HELOCs.

71. The credit limit under the Class members' HELOCs was a material term of the contract between Class members and Defendant. Defendant materially breached the terms of the HELOCs by reducing the credit limit for Hickman's and the other Class members' HELOCs where no significant decline in value had first occurred.

72. Hickman and the other Class members have suffered damages in the form of being denied the full use of the bargained-for credit limits, appraisal fees, the increased price of credit, adverse effects on their credit score, loss of interest, appraisal fees, and other damages.

73. Hickman, on his own behalf and on behalf of the other Class members, seeks actual and compensatory damages for Defendant's breach of contract, as well as interest, attorneys' fees, and costs in an amount to be determined at trial.

## Count VIII: Breach of Contract
## (on behalf of Hickman and the Class)

74. Plaintiff incorporates Paragraphs 1-73 as if fully set forth herein.

75. Hickman and the other Class members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the Class members and Defendant.

76. Under the terms of the HELOC agreement, Plaintiff paid Defendant an Annual Fee of $75 beginning the year following the date of the agreement and continuing every year thereafter. This Annual Fee, along with other fees and closing costs, were part of Plaintiff's and the Class members' contractual obligations under the terms of the HELOC agreements. Under the terms of the HELOC agreements, Defendant assessed the Annual Fee for each year that the HELOC account was open commencing on the first anniversary of the account opening,

77. Hickman and the other Class members performed under their HELOCs with Defendant. They paid the Annual Fee, made the payments due to Defendant under the HELOCs and otherwise complied with the terms of the HELOCs.

16

78.     Upon information and belief, Defendant has materially breached the terms of the HELOC agreements by continuing to assess Plaintiff and Class members an Annual Fee for use of a HELOC account that had been unilaterally decreased or suspended.

79.     Additionally, upon information and belief, Defendant has materially breached the terms of the HELOC agreements by failing to provide Plaintiff and the Class members the use of the full, bargained-for credit limits under the HELOCs for the entire 12-month period that was contemplated in the HELOC agreement and secured by payment of the Annual Fee.

80.     Hickman and the Class members have suffered economic loss and other damages in the form of Annual Fees, being denied the full use of their bargained-for credit limits, and other damages.

81.     Hickman, on his own behalf and on behalf of the other Class members, seeks actual and compensatory damages for Defendant's breach of contract, as well as interest, attorneys' fees, and costs in an amount to be determined at trial.

### Count IX: Violation of the Illinois Consumer Fraud Act (815 ILCS 505/2) (on behalf of Hickman and the Class)

82.     Plaintiff incorporates Paragraphs 1-81 as if fully set forth herein.

83.     Defendant's wrongful acts, as set forth throughout this Complaint, constitute unfair methods of competition, deceptive business practices, misrepresentation, and concealment, suppression or omission of material facts with the intent that consumers will rely on the concealment, suppression or omission of the material facts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 505/2 *et. seq*. ("Consumer Fraud Act").

84.     Defendant's unlawful acts have occurred in commerce and have caused serious and irreparable injury to Plaintiff and the Class, and unless restrained by this Court will continue to cause further injury.

85.     Defendant's statements regarding the availability of credit through the HELOCs were false and likely to deceive a reasonable consumer. Further, Defendant's statements as to its

potential bases for reducing credit limits – including that any potential future reduction of credit through the HELOCs would only occur through a substantial decline in property value – were false and likely to deceive a reasonable consumer.

86.     Wells Fargo's conduct was deceptive and untrue, as the AVM models it utilized to determine the values of the subject properties of the Class members securing the HELOCs were, on information and belief, without a sound factual basis and were inaccurate and unsubstantiated so as to make their use unfair, deceptive, and readily subject to manipulation. Upon information and belief, Wells Fargo intentionally utilized faulty and unreliable AVM models in order to minimize the property values of its customers and provide a false and misleading basis for reducing credit limits. These unfair, immoral and unscrupulous acts and practices constitute deceptive and unfair business practices in violation of the Illinois Consumer Fraud Act.

87.     Wells Fargo's conduct was also deceptive and unfair because Wells Fargo deprived borrowers of critical information needed to determine whether to seek credit line reinstatement, including Defendant's valuation of the subject property and the value required for reinstatement. Wells Fargo's conduct was further unfair, immoral and unscrupulous because it shifted the burden of seeking reinstatement, and paying for an appraisal upfront, to borrowers in contravention of TILA and Regulation Z. Upon information and belief, Defendant's deprivation of critical information and shifting of the reinstatement burden onto the borrowers was an intentional contravention of TILA and Regulation Z specifically designed to discourage borrowers from seeking reinstatement and thereby minimize Defendant's credit exposure.

88.     As a direct and proximate result of the deceptive, unfair, unscrupulous and unconscionable practices of the Defendant set forth above, Plaintiff and the Class are entitled to actual and compensatory damages, penalties, attorneys' fees, and costs as set forth in §10(a) of the Illinois Consumer Fraud Act, 815 ILCS 505/10(a), in an amount to be determined at trial.

## Count X: Breach of the Implied Covenant of Good Faith and Fair Dealing
### (on behalf of Hickman and the Class)

89.     Plaintiff incorporates Paragraphs 1-88 as if fully set forth herein.

90.     Hickman and the other Class members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the Class members and Defendant.

91.     Implied in the terms of each of these HELOCs was a covenant of good faith and fair dealing. This implied covenant prevents Defendant from engaging in conduct which frustrates the Class members' rights to the benefits of the contract or which would injure the right of the Class members' to receive the benefits of their HELOCs.

92.     The credit limit was a material term of the Class members' HELOCs. Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by reducing the credit limit for Hickman's and other Class members' HELOCs where the property supporting the HELOCs did not significantly decline.

93.     Wells Fargo also breached the covenant of good faith and fair dealing by pushing onto Class members the burden of obtaining and paying upfront for appraisals, rather than require a request for reinstatement from the borrower, then perform its own investigation and only charge those bono fide fees so incurred. Wells Fargo's intentional shifting of the burden in this manner discourages Class members from seeking reinstatement and, upon information and belief, was intentionally designed by Wells Fargo to discourage Class members from seeking reinstatement and, thus, receiving the full benefit of their HELOC agreements.

94.     Wells Fargo has further breached the covenant of good faith and fair dealing by failing and refusing to disclose how it determines (or even defines) "substantial decline in value," or the methods used by its AVM models, or the property value required to reinstate credit limits so that Hickman and the other Class members could determine whether it was in their interest to obtain a secondary appraisal on their homes or otherwise challenge Wells Fargo's action and seek reinstatement of the credit limits.

95.     Implicit in the HELOC agreements were contract terms that required Wells Fargo to follow TILA and Regulation Z. Wells Fargo's shifting of the burden onto the borrowers to obtain and pay for an appraisal upfront, and Wells Fargo's intentional withholding of crucial information, constituted violations of TILA and Regulation Z.

96.     Upon information and belief, Defendant's shifting of the reinstatement burden onto the borrowers, and deprivation of critical information, was an intentional contravention of TILA and Regulation Z specifically designed to discourage borrowers from seeking reinstatement. Wells Fargo's actions in this regard constituted a breach of the covenant of good faith and fair dealing, as they were designed to frustrate the Class member's right to receive the full benefits of the HELOCs.

97.     Defendant's breach of the covenant of good faith and fair dealing caused Hickman and other Class members to incur damages. These damages occurred in the form of Class members being denied the full use of their bargained-for credit limits, appraisal fees, the increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

98.     Hickman, on his own behalf and on behalf of the other Class members, seeks damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well as interest, attorneys' fees, and costs in an amount to be determined at trial.

### Count XI: Unjust Enrichment/Restitution
### (on behalf of Hickman and the Class)
### (in the alternative to breach of contract claims)

99.     Plaintiff incorporates Paragraphs 1-66 and 82-98 as if fully set forth herein.

100.    In the alternative, and in the event this Court finds that no contract provision expressly governs the issues raised herein, or that Defendant has not breached the terms of its HELOC contracts, Wells Fargo has knowingly received and retained benefits from Plaintiff and the Class members under circumstances that would render it unjust to allow Wells Fargo to retain such benefits.

101.    By utilizing inaccurate and unsubstantiated valuation models that did not provide

particularized and accurate valuations of the properties of each Class member, and by requiring Plaintiff and the Class members to obtain and pay upfront for appraisals in order to seek reinstatement of their HELOCs, Wells Fargo knowingly received and appreciated the benefits of up-to-date full appraisals on properties in which they have security interests. Such appraisals are more accurate than the AVM models utilized by Wells Fargo, and it would be unjust for Wells Fargo to obtain and keep the benefit of the updated, accurate appraisals without Wells Fargo bearing the cost of such appraisals.

102.    Additionally, Wells Fargo has been unjustly enriched by retaining money that should otherwise have been provided to customers as part of their HELOCs. Wells Fargo unlawfully and inappropriately reduced or froze the credit limits of the Class members, thus allowing Wells Fargo to utilize monies for its own purposes rather than for extending credit to Class members as previously promised. It is unjust to allow Wells Fargo to keep such a benefit in light of its actions in violation of TILA and Regulation Z and in light of the significant harm its action caused the Class members and the economy, as a whole.

103.    Additionally, Plaintiff and the Class members have conferred a benefit upon Defendant by paying Annual Fees to Defendant for use of their HELOCs. Defendant's receipt and retention, in full, of the Annual Fees is unfair and unjust in light of its unjust and illegal reduction or freezing of the HELOC accounts of Plaintiff and the Class members and denying them the full bargained-for use of the HELOC accounts.

104.    Wells Fargo has been unjustly enriched by failing to refund, and continuing to assess, an Annual Fee despite illegally reducing or freezing the HELOC accounts of Plaintiff and the Class members and preventing the full use of the HELOC accounts.

105.    As an actual and proximate result of its actions, Well Fargo has received and retained a benefit at the expense and detriment of Plaintiff and the Class members in the form of appraisal fees, the value of the credit unlawfully not extended to the Class members, and collected Annual Fees.

106.    Plaintiff and the Class members seek damages and disgorgement of all revenue

and profits gained through Wells Fargo's unjust enrichment, plus interest and attorneys' fees, in an amount to be determined at trial. Plaintiff and the Class members also seek punitive damages, as Wells Fargo's actions were willful, deceptive, and made in bad faith.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendant Wells Fargo and enter an Order:

(a)　Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class;

(b)　Entering declaratory judgment under 28 U.S.C. § 2201 on Counts I, III and V that the Defendant's HELOC reductions violate federal law;

(c)　Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Counts II, IV and VI;

(d)　Awarding damages for the Class on Counts II, IV, VI, VII, VIII, IX and X, including actual and compensatory damages for appraisal costs, negatively impacted credit scores, the denial of the full bargained-for benefits of the HELOCs, the increased cost of credit, lost interest, and other damages in an amount to be determined at trial;

(e)　Awarding equitable and injunctive relief for the Class, including enjoining the Defendant from further violations of TILA and Regulation Z, restoration of the HELOC credit limits, the restitution of property gained through deceptive business practices alleged herein, and an accounting of such property;

(f)　Awarding actual damages and disgorgement of all revenue and profits gained through Defendant's unjust enrichment from its collection of Annual Fees, failure to extend credit, and receipt of up-to-date accurate appraisals paid for by Class members;

(g)　Awarding Plaintiff and the Class reasonable costs and attorneys' fees;

(h)　Awarding pre- and post-judgment interest;

(i)　Awarding punitive damages; and

(j)     Granting such other and further relief as the Court may deem just and proper.

## Jury Trial Demand

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 19, 2009

Respectfully submitted,

MICHAEL HICKMAN, individually and on behalf of a class of similarly situated individuals

By:_____ /s/ Steven Lezell_____
       One of His Attorneys

Jay Edelson
Steven Lezell
Evan M. Meyers
KAMBER EDELSON, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@kamberedelson.com
slezell@kamberedelson.com
emeyers@kamberedelson.com