# EXHIBIT B

**DATE OF AGREEMENT:** 5/10/2006
**MATURITY DATE:** 5/10/2046
**ACCOUNT #:** ~~[redacted]~~
**REFERENCE #:** ~~[redacted]~~

## EquityLine with FlexAbility℠ Agreement
## and Disclosure Statement (the "Agreement")

**Borrower's Names:** MICHAEL A HICKMAN
RILEY N HICKMAN

**Property Address:**
313 S HUDSON STREET, WESTMONT, IL 60559-0000

**Mailing Address billing purposes (if different):**
3841 ELLINGTON AVE, WESTERN SPRINGS, IL 60558-0000

**Credit Line Limit:** $ 75,000.00

## SECTION 1: MY ACCOUNT AGREEMENT

In this Agreement, the words, "I", "me", and "my" (which also means "we", "us" and "our" if more than one customer signs below) refer to each person who signs this Agreement. The words "you", "your", "Lender", and "the Bank" refer to Wells Fargo Bank, N.A. Each person who signs this Agreement is jointly and individually (solidarily) bound by its terms and will be directly liable to the Bank for the entire amount owed on the Account, and each is liable as the principal and not merely as a guarantor, even if only one of us uses the Account.

## SECTION 2: SECURITY INTEREST

[X] I am giving the Bank a Deed of Trust, Mortgage or other Security Instrument dated the same date as this Agreement (the "Security Instrument"), on my property. The property is located at the address shown above (the "Property").

[N/A] This Agreement is intended to evidence an "Extension of Credit" as that term is defined by Section 50(a)(6), Article XVI of the Texas Constitution secured by a Deed of Trust dated the same date of this Agreement (the Security Instrument) covering my homestead. The property is located at the address shown above (the "Property").

AGR 082504

1/19

## SECTION 3: MY EQUITYLINE WITH FLEXABILITY (the "Account")

My Account is a revolving account and will have both a Draw Period and Repayment Period (described below). My credit limit is shown above and will be displayed on each of my billing statements. During the Draw Period, as I use my account, my available credit will be my credit limit minus the sum of all unpaid Advances and other fees and charges posted to my Account. As I repay the principal balance I owe on my Account, my available credit will be replenished. I agree not to request an Advance that would cause my balance to exceed my credit limit. If at any time the balance of my Account exceeds my credit limit, I agree to be responsible for immediate repayment of the amount that exceeds my credit limit.

## SECTION 4: MY ACCOUNT DURING THE DRAW PERIOD

### DRAW PERIOD

My Account has a Draw Period 10 years from the date of this Agreement during which I may request advances. At the end of the Draw Period, I may request that the Bank renew the Draw Period for an additional 10 years. The Bank may, at its option, extend the Draw Period of my Account for an additional 10 years. In the event I do not request a renewal, my ability to obtain advances will stop at the end of the draw period.

If my Account is closed during the Draw Period or the Draw Period ends, the unpaid balance on the Line of Credit will convert to a Fixed Rate Advance(s) as detailed in **MY ACCOUNT DURING THE REPAYMENT PERIOD**.

### ADVANCES DURING THE DRAW PERIOD

There are 2 types of advance methods on my Account:

- Line of Credit Advances
- Fixed Rate Advance(s)

Advances requested by me, if my Account is not closed or suspended, shall be considered obligatory as long as I am in compliance with all terms of this Agreement. The Bank may, at its discretion, withhold a portion of the available credit on my Account up to the amount of any payment due in order to assure that my check or other payment instrument is honored.

### Line of Credit Advance(s)

As I use my Account, my available credit will be my credit limit minus the sum of all unpaid advances. As I repay the principal balance I owe on my Account, my available credit will be replenished. I agree not to request an advance that would cause my aggregate balance to exceed my credit limit. If I do exceed my credit limit, I agree to be responsible for immediate repayment of the amount that exceeds my credit limit.

I will not make an advance for which there is not sufficient available credit in my account, or which would violate any law. Each advance I request will be in the amount of:

     X    $300 or greater.

     N/A    $4,000 or greater (Texas homestead property only).

I understand that the Bank may refuse to pay any advance if the advance does not comply with every requirement of this Agreement. The Bank may choose at its sole discretion to make an advance that does not comply. The Bank may pay any advances in any sequence convenient to the Bank.

The Bank is authorized to make an advance from my Account when it receives a request given by any person who has signed this Agreement. If there are conflicting demands made by any of us who signed this Agreement, the Bank has the option to refuse to make any advance that has not been requested by all of us together. The Bank will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when the Bank acts upon such instructions believing them to be genuine.

**Line of Credit Advance Methods**

While my Account is not in default, closed, or suspended, I may borrow money through my Account by:

- [X] Requesting an advance in person at any Bank branch,
- [X] Requesting an advance by phone,
- [X] Writing a special check or draft which the Bank has provided to me,
- [X] In other ways the Bank authorizes from time to time,
- [X] Obtaining a cash withdrawal or transferring funds by using my Wells Fargo ATM Card or Wells Fargo ATM & Check Card, if offered by the Bank and I select such service,
- [X] Equity-Line Platinum Card ® (Available only upon request).

**Line of Credit Advance(s) Finance Charge**

The Line of Credit interest rate is tied to an Index (to which a margin or spread as shown below is added) and may change for each monthly billing cycle. During the Draw Period, **FINANCE CHARGES** begin to accrue on amounts advanced on the date each advance is made. I will be charged a **FINANCE CHARGE** on the unpaid balance of my Line of Credit at the end of each day at a variable Daily Periodic Rate.

- The variable Daily Periodic **FINANCE CHARGE** Rate is equal to 1/365 (1/366, during leap years) of an annual rate of 0.125 % (the "margin" or "spread") plus the "Index Rate".
- The Index Rate is the Wall Street Journal Prime Rate (Western Edition) as published in the "Money Rates" section. When a range of rates is published, the Index is the highest rate.

The variable Daily Periodic **FINANCE CHARGE** Rate may increase from billing cycle to billing cycle if the Index Rate increases. The initial variable Daily Periodic **FINANCE CHARGE** Rate is 0.02157534 %. This corresponds to an initial **ANNUAL PERCENTAGE RATE** of 7.875 %. This rate is subject to any minimum rate or maximum rate disclosed in this documents.

[N/A] If this box is checked, the variable Daily Periodic **FINANCE CHARGE** Rate on my Line of Credit will be adjusted on the first day of every billing cycle, using the Index Rate published on the last business day of the prior month. I understand that any increase may cause me to make larger monthly payments.

[N/A] If this box is checked, the variable Daily Periodic **FINANCE CHARGE** Rate on my Line of Credit will be adjusted on the first day of every billing cycle, using the Index Rate published on the last day of my prior cycle. I understand that any increase may cause me to make larger monthly payments.

[X] If this box is checked, the variable Daily Periodic **FINANCE CHARGE** Rate on my Line of Credit will be adjusted the day of an Index Rate change as published in the Wall Street Journal. I understand that any increase may cause me to make larger monthly payments.

[N/A] If this box is checked, the variable Daily Periodic **FINANCE CHARGE** Rate on my Account will be adjusted on the first day of every month, using the Index Rate published on the last business day of the prior month. I understand that any increase may cause me to make larger monthly payments.

- The **ANNUAL PERCENTAGE RATE** on my line of Credit will never be more than 18 %. The **ANNUAL PERCENTAGE RATE** does not include any charges other than interest.

[N/A] If this box is checked, the above referenced spread or margin, **ANNUAL PERCENTAGE RATE,** and daily periodic **FINANCE CHARGE** shall be changed daily in accordance with the table below, based on my unpaid balance on my Line of Credit, not including any Fixed Rate Advance balances, at the end of each day, subject to any minimum rate or maximum rate disclosed in this document.

GB    082504

| RANGE OF OUTSTANDING BALANCES | | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|---|
| Up to $ | | % | % | % |
| $ | to $ | % | % | % |
| $ | and above | % | % | % |

X   If this box is checked, there is a Minimum **ANNUAL PERCENTAGE RATE** on my Line of Credit. The **ANNUAL PERCENTAGE RATE** on my Line of Credit will never be less than 4.24 _____ % (the "Floor Rate"). If the initial **ANNUAL PERCENTAGE RATE** set forth above is LESS than 4.24 _____ % then the actual daily periodic rate in effect as of the date of this Agreement is 0.01161644 _____ % which corresponds to an **ANNUAL PERCENTAGE RATE** of 4.24 _____ %.

## Line of Credit Payment

During the Draw Period my Line of Credit Regular Minimum Monthly Payment shall be in accordance with the payment option checked below:

N/A   A payment equal to the greater of $100.00 or 1.5% of my unpaid Line of Credit balance and credit insurance premiums, if any. This amount will change in the Repayment Period.

X   A payment equal to the **FINANCE CHARGE** and credit insurance premiums, if any, owing. This amount will change in the Repayment Period.

## Fixed Rate Advance(s):

An optional feature of this Account is that I may convert future advances to a Fixed Rate Advance(s) during the Draw Period based on credit limit availability.

### Fixed Rate Advance(s) Finance Charge

The Fixed Rate Advance(s) interest rate is tied to an Index (to which a margin or spread within the maximum stated below is added) as of the date the Fixed Rate Advance(s) is requested.

During the Draw Period on my Account I may request up to 8 Fixed Rate Advance(s) with no more than 3 Fixed Rate Advance(s) existing at any one time in the amounts and terms within the ranges set forth below:

| Fixed Rate Advance Amount | Term Range |
|---|---|
| $10,000 – 19,999.99 | 5 to 15 years |
| $20,000 – 49,999.99 | 5 to 30 years |
| $50,000 – and above | 7 to 30 years |

During both the Draw and Repayment Period, you will charge me the **FINANCE CHARGE** on my unpaid Fixed Rate Advance(s) balance at the end of each day at a fixed daily periodic rate. It is equal to 1/365 (366 during leap years) of an annual rate calculated by adding a variable margin of 0% to 8% (the margin or spread) plus the "Index Rate" in effect on the day I request the Fixed Rate Advance. The Index Rate is the Wall Street Journal Prime (Western Edition) based on the Index published in the "Money Rates" section on the day I request the Fixed Rate Advance. The margin shall be determined by the bank in its sole discretion based upon its then current interest rates for advances of similar amount and terms. The **ANNUAL PERCENTAGE RATE** on my Fixed Rate Advance(s) will never be more than 18         %. The **ANNUAL PERCENTAGE RATE** does not include charges other than interest.

## Finance Charge and Terms on Today's Fixed Rate Advance

N/A  If this box is checked, I have requested a Fixed Rate Advance today in the amount of $ N/A         , and for a N/A month term. My fixed Daily Periodic **FINANCE CHARGE** on this Fixed Rate Advance is N/A         %, with a corresponding **ANNUAL PERCENTAGE RATE** of N/A         %. I agree to make N/A Minimum Monthly Payments in the amount of $ N/A         , which includes both principal and interest.

**Fixed Rate Advance(s) Conversion Fee**

[X] I agree to pay you a $50.00 Conversion Fee each time I request and obtain a Fixed Rate Advance(s).

[N/A] There is no Conversion Fee (Texas properties only).

**Fixed Rate Advance(s) Payment**
During the Draw and Repayment Period my Minimum Monthly Payment will be equal to the amount of principal plus **FINANCE CHARGE** sufficient to repay each Fixed Rate Advance(s) within the chosen term in equal, fully amortizing monthly payments. This assumes that all payments will be made on their due dates, which will be the same due date as the Line of Credit Minimum Payment Due Date. If my payments are not consistently made when due, the final payment amount may be adjusted.

**Example of Finance Charge and Terms on Future Fixed Rate Advance**
For example, if I were to request a Fixed Rate Advance in the amount of $10,000 for a 5 year term, on a day when the Index is the same as it is today and the margin were 8%, my fixed Daily Periodic **FINANCE CHARGE** on my Fixed Rate Advance would be 0.040411      % with a corresponding **ANNUAL PERCENTAGE RATE** of 15.75      %. In connection with this Fixed Rate Advance, I would make 60 Minimum Monthly Payments consisting of both principal and interest.

**My Total Account Payment Due During the Draw Period**
To make all required payments on my Account, I will receive monthly billing statements from the Bank. The Ending Balance shown on my billing statement is the total of all unpaid obligations which have been posted to my Account as of the date of the statement, including line of credit advances, overlimit amounts (to the extent allowed by law) and Fixed Rate Advance(s), **FINANCE CHARGES**, Late Charges, insurance, other charges, and fees. I can pay either the Ending Balance in full or in monthly installments, but I must pay at least the amount of the Total Payment Due by the Date Due, as shown on the billing statement.

The "Total Payment Due" consists of my Fixed Rate Advance(s) and Line of Credit Regular Minimum Monthly Payment together with all past due amounts and overlimit amounts (to the extent allowed by law) and all other charges due.

**My Total Finance Charge on my Account During the Draw Period**
My **FINANCE CHARGE** for each monthly billing cycle is figured by separately multiplying the unpaid Line of Credit balance and Fixed Rate Advance(s) balance(s), if any, at the end of each day in the current billing cycle by the applicable Daily Periodic Rates and then adding the results together. My unpaid balance(s) at the end of each day will reflect all advances, balances, payments and credits made that day.

**Credit Limit Increases to my Account during the Draw Period**

**Customer Requested Credit Limit Increase**
I may apply for an increase in my credit limit, and if I do so I agree to pay any application, appraisal and other fees, including increased costs for title insurance, as the Bank may require. If the Bank approves my application and increases my credit limit, I will provide and maintain such additional hazard insurance (including flood insurance, if necessary) as the Bank may require.

**Bank Credit Limit Increases**
The Bank may from time to time in its sole discretion, approve additional credit for me under the terms of this Agreement. I will receive written notice from the Bank of such offer to increase my Credit Limit. I may accept such offer of increased credit by my use of those additional funds without signing any additional documents. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Mortgage or Deed of Trust, which secures this Agreement.

## SECTION 5: MY ACCOUNT DURING THE REPAYMENT PERIOD

### REPAYMENT PERIOD

I understand that advances will no longer be allowed at the end of the Draw Period. At that time, I will begin the Repayment Period, which will continue until the Maturity Date.

### FIXED RATE ADVANCE(S)

During the Repayment Period, I will continue to make my payments on my Fixed Rate Advance(s) in effect as of the end of the Draw Period. If my payments are not consistently made when due, the final payment amount will be adjusted. The Bank will notify me in advance of any changes to my Fixed Rate Advance Regular Minimum Monthly Payments.

### LINE OF CREDIT BALANCE DURING THE REPAYMENT PERIOD

After the expiration of the Draw Period, unless I request a shorter term, the unpaid Line of Credit Balance will be converted into a new Fixed Rate Advance. The Fixed Rate Advance created, as a result of the unpaid balance on my Line of Credit at the End of Draw Period:

- Will have a term of 15 years if the unpaid balance is less than $20,000 or 30 years if the unpaid balance is $20,000 or more.

- The Bank will calculate the payment amounts, which shall be equal, fully amortizing payments of principal and interest sufficient to repay the new Fixed Rate Advance by the end of its term.

- Will have a minimum principal and interest payment of $100, which may result in a term less than 15 years.

The Bank will notify me in advance of any changes to my payments due on this new Fixed Rate Advance. If my payments are not consistently made when due, the final payment amount will be adjusted.

### FINANCE CHARGE DURING THE REPAYMENT PERIOD

At the end of the Draw Period, when my unpaid Line of Credit balance converts to a Fixed Rate Advance, the **FINANCE CHARGE** on my balance will begin to accrue on the first day of the Repayment Period. I will be charged a **FINANCE CHARGE** based on the unpaid Fixed Rate Advance balance at the end of each day at the fixed Daily Periodic Rate, equal to 1/365 (1/366 during leap years) of the Index Rate published on the first business day after the end of the Draw Period plus the spread or margin as described under the section entitled **MY ACCOUNT DURING THE DRAW PERIOD, Fixed Rate Advance(s).**

### MATURITY DATE

The Maturity Date on my Account shall be the later of (a) the maturity date of any Fixed Rate Advances(s) in effect on the day after the end of the Draw Period, or (b) the maturity date of the conversion of my unpaid Line of Credit to a Fixed Rate Advance after the end of the Draw Period. At that time, any remaining balance must be paid in full.

## SECTION 6: AUTOMATIC PAYMENT DISCOUNT

N/A  If this box is checked, I have chosen to make Automatic Payments from a qualified account, for all payment obligations under this Agreement as specified in the Authorization for Automatic Transfer and received a discount for making this choice. I understand that the **ANNUAL PERCENTAGE RATE** on my Line of Credit described above was based on a discount you gave me for this authorization for automatic payments from a qualified account. If the automatic payments are terminated for any reason by anyone, the spread or margin set forth hereinabove used to calculate the rate of **FINANCE CHARGE** on my Account will increase by N/A          % effective the next business day after the automatic payments are terminated. I will receive notice of this change in interest rate and payment as applicable.

X   If this box is checked the Automatic Payment Discount is not available for this account.

### AUTOMATIC PAYMENT DISCOUNT CANCELLATION - FIXED RATE ADVANCE(S)

If I have selected the automatic payment feature and either I or the bank have canceled this feature for any reason, then the interest rate on each of my Fixed Rate Advances will be subject to a one time increase of one quarter of a percentage point. If this happens, my monthly payments will be increased by an amount sufficient to repay the advance(s) over its remaining term in substantially equal payments. I will be notified in writing at least 25 days before the first increased monthly payment is due. This notice will contain information about my interest rate, payment amount and balance.

### SECTION 7: OTHER CHARGES AND COSTS DUE
I agree to pay the Bank the charges and costs set forth herein and those described on the HUD Settlement Statement (if applicable) at the opening of my Account.

### SECTION 8: OTHER FINANCE CHARGES

### ORIGINATION FEE (COLLECTION DEFERRED)

N/A  If this box is checked I agree to pay a $500 Origination Fee. The Bank has agreed to defer the collection of this Fee. This fee will be due and payable in full at any time within the first 3 years of my Account opening, if I close my Account (for any reason other than default, casualty loss, refinance with you or your affiliate or termination by the Bank). After 3 years, the Bank will waive this amount without any further action required on my part.

### ORIGINATION FEE (COLLECTED AT ACCOUNT OPENING)

N/A  If this box is checked I agree to pay a $ N/A          Origination Fee collected at the opening of my Account.

### PROCESSING FEE (COLLECTED AT ACCOUNT OPENING)

N/A  If this box is checked I agree to pay a $ N/A          Processing Fee collected at the opening of my Account.

### LINE OF CREDIT RATE CAP BUY-DOWN (OPTIONAL)

N/A  If this box is checked, I agree to pay $ N/A          to the Bank to receive a reduced maximum **ANNUAL PERCENTAGE RATE** on my Line of Credit ("Line of Credit Rate Cap") equal to no more than N/A          % plus the initial **ANNUAL PERCENTAGE RATE** N/A          %, for a lower maximum **ANNUAL PERCENTAGE RATE** of N/A          % on my Line of Credit. This reduction has been reflected in the Line of Credit Rate Cap disclosed in the **Line of Credit Advance(s) Finance Charge** section above. I understand that this does not apply to my Fixed Rate Advance(s).

## LINE OF CREDIT RATE BUY-DOWN (OPTIONAL)

N/A If this box is checked, I agree to pay $ N/A _____ to the Bank to receive a N/A _____ % reduction of the Periodic **FINANCE CHARGE** on my Line of Credit. This reduction has been reflected in the margin or spread disclosed in the **Line of Credit Advances Finance Charge** section above. I understand that this does not apply to my Fixed Rate Advance balances.

## ADDITIONAL FEES (OTHER FINANCE CHARGES)

In addition to the **Other Finance Charges** provided above in this Section 8, the following charges described on the HUD Settlement Statement and to be paid by me at the opening of my Account (as applicable) are also **Other Finance Charges**: Application Fee, Accommodation Recording/Signing Fees, Administrative Fee, Attorney Fee, Express Mail - Overnight Delivery, Mortgage Broker Fees, Computerized Loan Origination Fee, Document Preparation Fee, Points, Prepaid Interest, Redraw Fee, Recording Service Fee, Settlement or Closing (Escrow) Fees, Servicing Fee, Subordination Fee, Underwriting Fee, and Wire/Fax/Courier Fee.

## SECTION 9: FEES, COSTS AND CHARGES

In addition to the **FINANCE CHARGE**, I agree to pay the following non-refundable Fees, Costs and Charges, which will be owed once charged to my Account.

## ANNUAL FEE

N/A If this box is checked, beginning 1 year after the Date of this Agreement, each year my Account is open, whether or not I use it, a $75 non-refundable Annual Fee will be charged to my Account. This fee is billed on the monthly billing statement prepared in my Anniversary month. If my Account is open and my average daily balance is $20,000 or greater for the 12 months up to and including my Anniversary month, then the Bank will credit my Account $75 on the monthly billing statement prepared in my Anniversary month. For the purpose of making this determination, the Bank will add the average daily balance shown on the 12 monthly billing statements and divide the total by 12.

X If this box is checked, each year my Account is open, whether or not I use it, a $75 non-refundable Annual Fee will be charged to my Account. This fee is waived the first year my line of credit account is opened, and is billed beginning in the second and each succeeding year, during the Draw Period, on the anniversary date of my line of credit.

N/A If this box is checked there is no annual fee on my Account (Texas homestead properties only).

## LATE CHARGES

If my scheduled payment is more than 10 days past due, I will pay a Late Charge equal to the greater of 5% of the scheduled payment or five ($5.00) dollars.

## PREPAYMENT FEE

X If this box is checked I agree to pay a prepayment penalty fee of $ 500.00 . This fee will be due and payable in full at any time within the first 3 years from the date of this Agreement if I close my Account (for any reason other than default due to non-payment, casualty loss, or refinance with you or your affiliate). If my account remains open over 3 years from the date of this Agreement, no prepayment penalty will be assessed. No tender of a prepayment of this Agreement shall be effective unless and until such prepayment is accompanied by the applicable prepayment fee.

N/A If this box is checked, I have requested a waiver of the prepayment fee. I understand that the margin or spread disclosed in the **Line of Credit Advance(s) Finance Charge** section above has been increased by .25% for this waiver.

N/A If this box is checked there is no prepayment penalty fee on my Account.

## OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

    (a)  **Fax Fee**:  If I request or authorize others to request any document or letter to be transmitted by facsimile (fax) machine, the Bank will charge me a fee in the amount of $10.

    (b)  **Research Fee and Photocopy Fee**:  If, for any purpose other than a billing error inquiry, I request or authorize someone to request that the Bank research my Account or provide photocopies of Account documents, the Bank will charge me a fee in the amount of $5 per photocopy.

    (c)  **Reconveyance or Satisfaction Fee**:  Reconveyance and satisfaction fees will be charged as allowed by the law of the state where the Property is located.

    (d)  **Stop Payment Fee**:  If I request that the Bank stop payment on a draft I have used to advance on my Line of Credit, the Bank will charge me a fee of $25.

    (e)  **Return Check Fee**:  If I make a payment with a check that is dishonored for any reason, the Bank will charge me a fee of $25.

    (f)  **Overlimit Fee**:  At the Bank's discretion an overlimit fee will be charged in the amount of $25.

    (g)  **Return Advance Check Fee (insufficient funds)**:  At the Bank's discretion a Return Advance Check Fee will be charged in the amount of $25.

## SECTION 10:  COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, and to the extent not prohibited by applicable law, I will pay the Bank's collection costs, attorney's fees and other expenses of enforcing the Bank's rights under this Agreement and the Security Instrument on the Property.

## SECTION 11:  METHOD OF PAYMENT

Depending on my chosen method of payment, the Bank will do one of the following each month, during both the Draw and Repayment Periods:

X   Provide me with a bill stating the Total Payment Due.

N/A  Automatically charge my account (under the terms of a separate written (ACH) automatic transfer authorization) for Total Payment Due.  Other charges due will be billed and must be paid separately.  However, if I have past due amounts on my Account, you will bill me for all payment amounts due and not use an automatic payment to collect these amounts.

## SECTION 12:  SCHEDULED PAYMENT DUE DATE

My monthly due dates for my Total Payment Due is the 20         day of each and every month during both the Draw and Repayment Periods.

## SECTION 13: MY PROMISE TO PAY

I promise to pay the Bank the total of all advances which I make or which I authorize to be made from my Account. I promise to pay the total of any **FINANCE CHARGE**, plus all amounts past due, overlimit amounts, and any Late Charges, fees, other charges and other obligations charged to my Account under this Agreement or the Security Instrument. All payments made under this Agreement will be made in U.S. dollars.

I will make payments at the Bank's address for receiving a payment, as indicated on my payment coupon and billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement.

I understand that payments I make by Automatic Payments or by mail to the remittance address indicated on my billing statement and received prior to a 5 p.m. cut-off time on any day, including Saturdays, Sundays and holidays, will be credited to my Account as of the date received. Payments received after the cut-off time will be credited as of the next day.

I understand that payments I make at a Bank branch, online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited as of the business day the payment is received by the bank. Saturdays, Sundays, and federal holidays are not considered business days; payments received on these days or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Account and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under this Agreement. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Account in full with less that the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

## SECTION 14: TAX DEDUCTIBILITY

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my account.

## SECTION 15: REEVALUATION OF CREDIT QUALIFICATIONS AND CREDIT REPORTS

My signature on this Agreement authorizes the Bank to obtain credit information about me, including credit bureau reports, at any time. Such credit bureau reports may be requested or used in connection with (a) renewal or extension of this Agreement, (b) review of my Account, (c) taking any collection action, or (d) any other legitimate purposes associated with my Account. Upon my request, I will be informed whether the Bank obtained a credit bureau report and, if so, the name and address of the credit bureau that furnished the report. I agree to submit current financial information to the Bank upon the Bank's request. The Bank may reexamine and reevaluate my credit qualifications at any time. The Bank may report its experience with me and my Account to others, to the extent allowed by law.

## SECTION 16: PAYOFF BALANCE INFORMATION

The Bank will tell me the balance required on any given day to pay off my Account in full, if I so request. If such request is made on my behalf by an escrow holder or settlement agent, the Bank may immediately freeze my Account. While my Account is frozen, I cannot receive new advances and the Bank will return unpaid any advance checks the Bank receives and refuses to honor any other advance request made on my Account. This payoff freeze will be lifted and my Account reopened if the request for payoff balance information is withdrawn and the Bank has received written confirmation from the escrow holder or other settlement agent that the escrow or other settlement has been cancelled.

## SECTION 17: DEFAULT

I will be in default if (a) I fail to meet the repayment terms of this Agreement for any outstanding balance, or (b) there is fraud or material misrepresentation by me in connection with this Agreement, or (c) any action or inaction by me adversely affects the Bank's security in the Property, including without limitation, transfer of the Property without the Bank's consent, failure to maintain required insurance or pay required taxes, or the death of any person who has signed this Agreement. If I am in default, the Bank, subject to applicable law, may do any or all of the following: (a) close my Account immediately, without notice; (b) return to the payee without paying any outstanding advance checks drawn on my Account and refuse to honor any other advance request made on my Account; and (c) require immediate payment of the entire balance of my Account, and, if I fail to pay, exercise the Bank's rights under the Mortgage/Deed of Trust covering the Property which may result in the loss of the Property. If I am in default, the method of determining the Daily Periodic **FINANCE CHARGE** Rate will remain as described in this Agreement. The Bank and I agree that notwithstanding any other provision of this Agreement or the Mortgage/Deed of Trust, the Bank will have the right to terminate or suspend my Account to the extent permitted by applicable law.

## SECTION 18: CLOSURE OR SUSPENSION OF ACCOUNT

Any one Borrower can close the Account by paying in full and sending a signed letter to the Bank requesting that the Account be closed. Any one Borrower may terminate the advance feature, at any time, by sending a signed letter to the Bank requesting the termination of the advance feature. To reactivate the advance feature on the Account, the Bank will require all Borrowers to sign such written request.

The Bank may suspend the use of my Account and temporarily close my Account to future advances for any reason permitted by applicable law, including without limitation, (a) if the annualized Daily Periodic **FINANCE CHARGE** Rate equals or exceeds the Maximum Annual Percentage Rate stated herein, (b) there is any material change in my financial circumstances that the Bank reasonably believes will make me unable to fulfill my repayment obligations under this Agreement, (c) the value of the Property declines significantly below its original appraised value, as determined by the Bank, (d) my failure to comply with any material obligation under this Agreement or the Security Instrument, (e) a regulatory authority has notified the Bank that continued advances would constitute an unsafe and unsound business practice, or (f) government action prevents the Bank from imposing the Annual Percentage Rate provided for in this Agreement or impairs the Bank's Security Interest, such that the value of the security interest is less than 120 percent of the Credit Limit. In the event of a suspension of my Account, the Bank is authorized to obtain such information as may be required by the Bank, including without limitation, credit reports and appraisals of the Property, to evaluate any request by me to reinstate the Account. I authorize the Bank to bill the cost of obtaining such additional information to my Account. If my Account is closed or suspended for any reason, the Bank may return to the payee without paying any outstanding advance checks drawn on my Account and refuse to honor any other advance request made on my Account. I will continue to be responsible for full payment of the balance of my Account as well as all other account obligations, according to the terms of this Agreement.

## SECTION 19: REINSTATEMENT OF CREDIT

I will receive a written notice if the Bank suspends or freezes my Account or reduces my Credit Limit. The notice will include the reason(s) for such action(s). Thereafter, if I wish to reinstate my Account or increase my Credit Limit, I agree to send a written request to the Bank at the address specified on my monthly billing statement, signed by all of the Borrowers, along with satisfactory evidence to the Bank that the reason(s) for suspension or reduction of my Account no longer exist(s). I also agree to provide the Bank promptly with any additional information necessary to support my request.

## SECTION 20: FURTHER ASSURANCES

I agree that I will take any steps, including but not limited to, signing, filing or recording any documents, which are necessary or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Agreement become and continue to be secured by the Mortgage/Deed of Trust covering the Property.

## SECTION 21: CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY

I agree to notify the Bank immediately (a) if the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) if there is any change in the ownership of the Property. I agree that my Account shall be closed and that the entire outstanding balance of my Account shall be due and payable immediately on any sale or other transfer of the Property. In this regard, I understand that if my Account is secured by a Deed of Trust or Mortgage contains the following or substantially similar provision: Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Property or any interest therein, then at its sole option, the Bank may, by written notice to Trustor (or Grantor or Mortgagor), declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration and in such particular circumstances where exercise of such a right by the Bank is prohibited by law.

## SECTION 22: CHANGE IN TERMS

To the extent allowed by law, I agree that the Bank may make certain changes to the terms of this Agreement at specified times or upon the occurrence of specified events. The Bank may make insignificant changes, such as changes in the address for payments, billing cycle dates, payment due dates, day of the month on which index values are determined, index or interest rate rounding rules, and balance computation method (if the change produces an insignificant different in the interest I pay). The Bank may also make changes that will benefit me, such as additional options or a temporary reduction in rates or fees. In accordance with federal law, the Bank may also change the index and margin used to determine the Annual Percentage Rate if the index is no longer available. The Bank may make any of the changes discussed above without my consent, unless state law provides otherwise. The Bank will give me any notice of change that is required by law. I may also agree to changes in writing.

## SECTION 23: WAIVERS

### BORROWER'S WAIVER

I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Agreement, or who agrees to make payments to the Bank if I fail to keep my promises under this Agreement, or who signs this Agreement to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

### BANK NON-WAIVER

The Bank may fail to make use of any of its rights under this Agreement or the Security Instrument on the Property on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving its rights against any other party to this Agreement.

## SECTION 24: GOVERNING LAW

All interest, fees and other amounts charged or accruing in connection with this Agreement which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Agreement and all related documents, as well as the rights, remedies, and duties of the Bank and the borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located, except that Texas Finance Code Chapter 346 (which regulates certain revolving credit accounts) does not apply to this Agreement.

## SECTION 25: ARBITRATION

### RESOLVING DISPUTES - ARBITRATION

I agree to contact the Bank immediately if I have a problem with one of my accounts or loans with the Bank or a service the Bank provides to me. Often a telephone call will resolve the matter quickly and amicably. However, if the Bank and I are not able to resolve our differences informally, I agree that any dispute between me and the Bank, regardless of when it arises or arose, will be settled using the following procedures.

I UNDERSTAND AND AGREE THAT THE BANK AND I ARE WAIVING THE RIGHT TO JURY TRIAL BEFORE A JUDGE IN A PUBLIC COURT. FURTHER, I WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY DISPUTE SUBJECT TO ARBITRATION.

### DISPUTES

A dispute is any unresolved disagreement between the Bank and me that relates in any way to accounts, loans, services or agreements subject to this Arbitration provision. It includes any claims or controversy of any kind, which arise out of or are in any way related to these accounts, loans, services or agreements. It includes claims based on broken promises or contracts, tort (injury caused by negligent or intentional conduct), breach of fiduciary duty or other wrongful actions. It also includes statutory, common law and equitable claim. A dispute also includes any disagreement about the meaning of this Arbitration Section and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Section. No dispute may be joined in an arbitration with a dispute of any other person or arbitrated on a class action basis. Furthermore, I agree that any arbitration I have with the Bank shall not be considered with any other arbitration and shall not be arbitrated on behalf of others without the consent of both me and the Bank.

### FEES AND EXPENSES OF ARBITRATION

Arbitration fees shall be determined by the rules or procedures of AAA, unless limited by applicable law. I understand that the AAA will determine the fees applicable to any arbitration that may be filed. If the applicable law of the state in which I opened my account limits the amount of fees and expenses to be paid by me, then no allocation of fees and expenses to me shall exceed this limitation. Unless inconsistent with applicable law, me and the Bank shall each bear the expenses of our own attorney, expert and witness fees, regardless of whether me or the Bank prevails in the arbitration. If either the Bank of I fail to submit to binding arbitration following a lawful demand, the party who fails to submit shall bear the costs and expenses incurred by the party compelling arbitration.

### BINDING ARBITRATION

Binding arbitration is a means of having one or more independent third parties resolve disputes without using the court system, judges or juries. Either me or the Bank may submit a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced. The American Arbitration Association (the AAA) will administer each arbitration, including the selection of arbitrators, pursuant to the commercial arbitration rules of the AAA. Each arbitration will be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable or invalid, the laws of the state governing the relationship between me and the Bank about which the dispute arose. To find out how to initiate arbitration, I can simply call any office of the AAA.

## EXCEPTION - CERTAIN REAL PROPERTY COLLATERAL

Notwithstanding contrary provisions herein, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured by real property and if arbitration of the dispute would preclude enforcement of a mortgage, lien or security interest securing such indebtedness unless the holder of such mortgage, lien or security interest specifically elects in writing to proceed with the arbitration.

## RIGHT TO OTHER REMEDIES PRESERVED

Neither this Arbitration Section, nor the exercise of any of the rights the Bank and I have under this Agreement, shall stop me or the Bank from exercising any lawful rights either me or the Bank has to use other remedies available for the purpose of (1) preserving, foreclosing, or obtaining possession of real of personal property; (2) exercising self-help remedies including setoff and repossession rights; or (3) obtaining provisional or ancillary remedies such as injunctive relief, sequestration, attachment, garnishment, or the appointment of a receiver from a court having jurisdiction.

## MISCELLANEOUS

The AAA - the arbitrator - and the parties - the Bank and I - shall, to the extent feasible, take any action necessary to assure that an arbitration proceeding hereunder is finished within one hundred eighty (180) days of the filing of the dispute with the AAA. Arbitration proceedings shall be conducted in the state in which I reside, at a location determined by the AAA. All statutes of limitations applicable to any dispute shall apply to any arbitration between the Bank and me. If a claim is properly filed in a small claims or justice court and if the small claims or justice court has jurisdiction to resolve the claim, including all cross-claims and counterclaims, then the party that demands arbitration and removes the claim from the small claims or justice court shall pay the administrative fee of the AAA and the fees, costs and expenses of the arbitrator.

## SECTION 26: LOST OR STOLEN ADVANCE CHECKS, BILLING ERRORS

## LOST OR STOLEN ADVANCE CHECKS (WHERE AVAILABLE), BILLING ERRORS

I will immediately contact the Bank at the phone number on my statement and confirm by letter if any of my advance checks are ever lost or stolen, if there are any errors in my monthly statement, or if I suspect any unauthorized use of my Account.

The Bank will not return to me my cancelled advance checks or other advance instruments after paying them. The Bank will make available photocopies of my advance checks and other instruments upon request. I will examine my Account statement promptly in order to identify any improper or unauthorized entries. In consideration for the Bank's payment of each advance check, I agree that even though I will not receive the original checks, all time periods under the Uniform Commercial Code (UCC) for examining my statement and reporting improper entries, including that UCC's statutes of limitation with respect to forged, unauthorized, or missing signatures or endorsements, will begin from the time my Account statement is sent or made available to me.

## UNAUTHORIZED TRANSACTIONS

I will also notify the Bank if someone has transferred, or may transfer money from my Account without my permission, or if I suspect any fraudulent activity on my Account. I can call the Wells Fargo Phone Bank at the telephone number on my statement, anytime, 24 hours a day, 7 days a week, or advise my local Bank office, followed by a written notice, or write to:

Wells Fargo Bank, N.A. P.O.Box 4233 Portland, OR 97208-4233

## NOTIFY THE BANK IN CASE OF ERRORS OR QUESTIONS ABOUT MY BILL

If I think my bill is wrong or if I need more information about a transaction on my bill, I will send a letter on a separate page to the Bank, as soon as possible, at the address listed on my bill. The Bank must hear from me no later than 60 days after the Bank sent me the first bill on which the suspected error or problem appears. I can telephone the Bank, but doing so will not preserve my rights. In my letter, I will provide the Bank with the following information:

- My name, account number and daytime phone number, and
- The dollar amount of the suspected error, and
- A description of the error and explanation, if possible, as to why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized the Bank to pay my bill automatically from my checking account, I can stop the payment on any amount I think is wrong. To stop the payment, my letter must reach the Bank three business days before the automatic payment is scheduled to occur.

## MY RIGHTS AND THE BANK'S RESPONSIBILITIES AFTER RECEIPT OF MY WRITTEN NOTICE

The Bank must acknowledge my letter within 30 days, unless the Bank has corrected the error by then. Within 90 days, the Bank must either correct the error or explain why the Bank believes the bill was correct. After the Bank receives my letter, the Bank cannot try to collect any amount I question or report me as delinquent. The Bank can continue to bill me for the amount I question, including finance charges, and the Bank can apply any unpaid amount against my Credit Limit. I do not have to pay any questioned amount while the Bank is researching my account, but I am still obligated to pay the parts of my bill that are not in question. If the Bank finds that a mistake was made on my bill, I will not have to pay any finance charges related to the questioned amount. If the Bank didn't make a mistake, I will have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, the Bank will send me a statement of the amount I owe and the date that payment is due.

If I fail to pay the amount that the Bank determines I owe, the Bank may report me as delinquent. However, if the Bank's explanation does not satisfy me and I write to the Bank within ten days telling the Bank that I still refuse to pay, the Bank must tell anyone the Bank reports to that I have a question about my bill. When the matter has been settled between the Bank and me, the Bank must tell anyone the Bank reports to that the matter has been settled. If the Bank does not follow the above rules, the Bank cannot collect the first $50 of the questioned amount, even if my bill was correct.

### SECTION 27: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Agreement may be given by mailing it to my address as it appears in the Security Instrument, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement, unless the type is more specifically addressed in the Agreement and a different address is provided herein.

**SECTION 28: PERSONAL LIABILITY (Texas Homestead Property Only)**

Subject to the provisions of this Section, the Bank and I intend that this Agreement evidence a home equity line of credit made under the authority of Section 50(a)(6) and Section 50(t), Article XVI of the Texas Constitution (the "Equity Law"), and that this Agreement be secured by a lien on my homestead property which is the same as the Property. As a home equity line of credit made pursuant to the Equity Law, the line of credit is without recourse for personal liability against the owner and the spouse of each owner of the homestead property, unless the owner or spouse obtained the line of credit by actual fraud. Subject to the following paragraphs of this Section, the provisions of this Agreement providing for payment of the indebtedness of this Agreement, attorney's fees and other expenses are limited by the Equity Law, and if not paid voluntarily, such amounts may be collected only from any persons or parties personally liable for payment pursuant to the Equity Law, or from proceeds of the sale of the Property, or otherwise in accordance with the Equity Law.

I intend to comply with all provisions and conditions of the Equity Law in order to secure this Agreement with a valid lien upon the Property. If, however, for any reason the lien of the Deed of Trust on the Property (the "Deed of Trust") is invalid due to a mistake, error or misrepresentation by me or anyone else signing this Agreement (other than actual fraud or any owner or spouse in obtaining the line of credit), then the parties intend and agree that this line of credit is not an equity line of credit made under the Equity Law and the non-recourse provisions of the Equity Law are not applicable. If, for any reason the Property described the Deed of Trust is not homestead property, due to mistake, error or misrepresentation by me or anyone else signing this Agreement, then the parties intend and agree that this line of credit is not an equity line of credit made under the Equity Law, the non-recourse provisions of Equity Law are not applicable, and the Deed of Trust remains a valid lien on the Property.

Acknowledging the complex and uncertain nature of the Equity Law, I release any claim or damages I may have now or in the future against the Bank relating to invalidity of the Lien or the Equity Law.

Provided, however, the provisions of this Section are not intended to act as waiver of any cure, penalty or other provisions of the Equity Law, if applicable. To the extent the terms of this Section conflict with any other provisions of this Agreement, the terms of this Section shall control.

**SECTION 29: ADDENDUM**

N/A If this box is checked, I agree to the attached addendum, modifications or amendments

**SECTION 30: STATE DISCLOSURES:**

THIS AGREEMENT, THE SECURITY INSTRUMENT AND THE CLOSING DOCUMENTS EXECUTED
HEREWITH CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL
AGREEMENT OF THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,
CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO
UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS AGREEMENT.

N/A

## NOTICE TO THE BORROWER

**DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS AGREEMENT IS SIGNED. READ THIS AGREEMENT BEFORE SIGNING IT.**

## ACKNOWLEDGMENT

I have received, read and retained a copy of the EquityLine with FlexAbility (SM) Agreement and Disclosure Statement (the "Agreement"), Agreement to Provide Insurance, Arbitration Agreement, the Mortgage/Deed of Trust on the Property securing this Account, and the HUD Settlement Statement provided to me at the closing, all of which I agree to by signing this Agreement. In addition, I hereby agree that the terms of this Agreement replaced the terms of any prior oral or written agreements, including for example, any and all commitment letters and pre-approval letters between the Bank and me.

BORROWER   MICHAEL A HICKMAN                                      DATE SIGNED

BORROWER   RILEY N HICKMAN                                        DATE SIGNED

BORROWER                                                         DATE SIGNED

BORROWER                                                         DATE SIGNED

BORROWER                                                         DATE SIGNED

BORROWER                                                         DATE SIGNED

BORROWER                                                         DATE SIGNED

BORROWER                                                         DATE SIGNED

## This is the last page for the closing package related to

## loan number ███████████