**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HICKMAN, an individual, on his own behalf and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 09-cv-5090 |
| v. | ) ) | |
| | ) | Honorable Amy J. St. Eve |
| WELLS FARGO BANK N.A., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Defendant") Motion to Dismiss ("Motion"). For the following reasons, the Court grants in part and denies in part Defendant's Motion.

## BACKGROUND

Plaintiff Michael Hickman ("Plaintiff") brings this class action on behalf of himself and all others similarly situated alleging that Defendant, a national banking association, illegally reduced credit limits on home equity lines of credit ("HELOCs") in violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), Regulation Z of the Truth in Lending Act, 12 C.F.R. § 226.5b ("Regulation Z"), and various state laws. For the purposes of this Motion, the Court assumes the following allegations are true.

Plaintiff obtained a $75,000 HELOC secured by real property located at 313 S. Hudson Street, Westmont, Illinois from Defendant on May 10, 2006. (R. 1, Complaint, ¶ 14; R. 1-2, Equity Line with FlexAbility Agreement and Disclosure Statement (the "Contract"), p. 1.) The terms of Plaintiff's HELOC are governed by the Contract. Section 18 of the Contract provides

that Defendant may "close [the] Account to future advances . . . [if] the value of the Property declines significantly below its original appraised value." (R. 1-2, Contract, § 18.) In addition, the Contract provides that, in the event of a closure or suspension of the account, Plaintiff "will continue to be responsible for full payment of the balance of [his] Account as well as all other account obligations, according to the terms of this Agreement." *Id.* Section 9 provides that each year the Contract is in effect, "a $75 non-refundable Annual Fee will be charged to [Plaintiff's] account." *Id.* at § 9.

On October 14, 2008, Defendant sent Plaintiff a letter indicating that Defendant was lowering the credit limit on Plaintiff's account to $31,039.83. (R. 1-1, October 14, 2008 letter from Defendant to Plaintiff ("October 14, 2008 Letter"), p. 1.) In the October 14, 2008 Letter, Defendant informed Plaintiff that "we are lowering the credit limit of your Account to $31,039.83 *due to a substantial decline in the value of the property securing the Account*." *Id.* (emphasis in original). The October 14, 2008 Letter did not provide Plaintiff with the value of the property as determined by Defendant or the method by which Defendant determined the value of the property. *Id.*

After receiving the October 14, 2008 Letter, Plaintiff contacted Defendant and requested the basis for Defendant's decision to reduce his HELOC. Defendant responded by letter dated October 20, 2008 and informed Plaintiff that Defendant valued Plaintiff's property using an automated valuation model ("AVM"). (R. 1-3, October 20, 2008 letter from Defendant to Plaintiff ("October 20, 2008 Letter"), p. 1.) Defendant further informed Plaintiff that, based on its valuation procedures, the value of the property as of May 1, 2008 was $531,000. *Id.*

Plaintiff alleges, on information and belief, that the value of the property securing his HELOC has not declined significantly in value. (R. 1, Complaint, ¶ 30.) Plaintiff further

alleges, on information and belief, that the AVM methodology employed by Defendant is inaccurate and unsubstantiated, making its use unfair, deceptive, and readily subject to manipulation. *Id.* at ¶ 31. Plaintiff also alleges that even if his property did experience a decline in value, Defendant did not have any factual basis to conclude that a significant decline was still in effect at the time it reduced his HELOC on October 14, 2008. *Id.* at ¶ 33.

Plaintiff alleges, on information and belief, that Defendant's lowering of his credit limit damaged his credit rating and increased the cost of credit to him. *Id.* at ¶ 17. In addition, after reducing Plaintiff's line of credit, Defendant continued to charge Plaintiff a $75 annual fee. *Id.* at ¶ 3. On January 26, 2009, Plaintiff received a notice indicating that Defendant increased the spending limit on his Wells Fargo credit card from $20,000 to $24,000.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No.* 7, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (court construes complaint in light most favorable to plaintiff drawing all reasonable inferences in plaintiff's favor).

## ANALYSIS

### I.      Request for Judicial Notice

"Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Defendant requests that the Court take judicial notice of seven additional documents. "Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper." *Id. See also* Fed.R.Evid. 201. Plaintiff does not oppose Defendant's request for judicial notice and indeed relies on several documents presented by Defendant in its opposition to the Motion.

The Court therefore takes judicial notice of the following documents because they are matters of public record and because they are central to Plaintiff's claim: (i) Home Equity Line of Credit Mortgage by Plaintiff in Favor of Defendant, (R. 16-1, Wells Fargo's Request for Judicial Notice, Ex. 1); (ii) Purchase Money Mortgage by Plaintiff in favor of Defendant, (*id.* at Ex. 2); and (iii) Special Warranty Deed in Favor of Plaintiff, (*id.* at Ex. 3). The Court also takes judicial notice of the following administrative documents: (i) June 26, 2008 Federal Deposit

Insurance Corporation ("FDIC") Financial Institution Letter, 2008 WL 2552743, (*id.* at Ex. 5); (ii) August 26, 2009 Memorandum issued by the United States Department of the Treasury entitled "Home Equity Line of Credit Account Management Guidelines" available on its official website, (*id.* at Ex. 6); and (iii) May 24, 2005 FDIC Financial Institution Letter, 2005 WL 1237869, (*id.* at Ex. 7). *Menominee Indian Tribe*, 161 F.3d at 456; *see also Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information contained on the FDIC official website). The Court declines to take judicial notice of the "parcel search results" pertaining to 313 S. Hudson Street, Westmont, Illinois (R. 16-1, Request for Judicial Notice, Ex. 4) because Defendant has not established that it is part of the public record or necessary for resolution of its Motion.

## II.    Motion to Dismiss

Defendant requests the Court to dismiss Plaintiff's Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendant's Motion.

### A.    Violations of TILA and Regulation Z – Counts II, IV, and VI

In Counts II, IV, and VI, Plaintiff alleges that Defendant's reduction of Plaintiff's HELOC violated TILA and Regulation Z. For the following reasons, the Court dismisses Counts IV and VI of Plaintiff's Complaint. The Court denies Defendant's Motion with respect to Count II.

#### 1.    Count II - Reduction of HELOC Limits

In Count II, Plaintiff claims that Defendant reduced his HELOC in violation of TILA and Regulation Z. Pursuant to TILA, a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an account under [an open end consumer credit] plan during

any period in which the value of the consumer's principle dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c)(2)(B). Similarly, under Regulation Z, a creditor may not change any term of a HELOC agreement, except that, a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which [] [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the [home equity] plan." 12 C.F.R. § 226.5b(f)(3)(vi)(A). The official staff commentary to Regulation Z issued by the Federal Reserve Board (the "Official Commentary") further explains that "[w]hat constitutes a significant decline for purposes of § 226.5b(f)(3)(vi)(A) will vary according to individual circumstances. In any event, if the value of the dwelling declines such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent, this constitutes a significant decline in the value of the dwelling for purposes of § 226.5b(f)(3)(vi)(A)." Official Commentary, cmt. 5(b)(f)(3)(iv)-6.[1]

In order to state a claim for violation of TILA and Regulation Z, Plaintiff must sufficiently allege that (i) Defendant reduced his HELOC (ii) during a period in which the value of his property did not decline to "significantly less than the original appraised value of the dwelling." 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A). Defendant does not dispute that Plaintiff has alleged that Defendant reduced his HELOC. Instead, Defendant argues

---

[1] The Official Commentary to TILA and Regulation Z is controlling in this context. *See Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 528 (7th Cir. 2007) (the "Supreme Court has held that 'deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z [and]. . . [u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive'") (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980)).

that Plaintiff's conclusory statement that "on information and belief, neither Hickman's property nor the property of the Class members has significantly declined in value," (R. 1, Complaint, ¶ 9), is insufficient to survive a 12(b)(6) motion to dismiss. Relying on *Iqbal*, Defendant reasons that Plaintiff's allegations are no more than conclusions.

Defendant's reading of federal pleading requirements, however, is too narrow. As the Seventh Circuit has explained, "courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks*, 578 F.3d at 581. Here, Plaintiff's Complaint provides Defendant with sufficient notice of Plaintiff's claim. Plaintiff specifically alleges that Defendant reduced his HELOC in contravention of TILA because his home did not experience a significant decline in value. (R. 1, Complaint, ¶ 38.)

Both parties cite to *Levin v. Citibank, N.A.*, 2009 WL 3008378, 2009 U.S. Dist. 85332, *8-*9 (N.D. Cal. Sept. 17, 2009), the only published opinion dealing with a class action TILA claim relating to reduction in HELOCs, to support their positions. The court in *Levin* declined to dismiss the plaintiff's complaint asserting a similar class action lawsuit under TILA and Regulation Z. In *Levin*, the plaintiff specifically alleged that he obtained an appraisal subsequent to receiving his notice of reduction in credit and that the appraisal indicated that the value of his home had declined less than ten percent from its value at the time plaintiff opened the HELOC. *Id.* at *3. Rather than imposing a requirement for a plaintiff to specifically allege facts supporting a claim that a home value did not decline significantly, the court in *Levin* merely held that the plaintiff's allegations regarding the value of his *home* were sufficient to survive a motion to dismiss even though Plaintiff did not allege that the *equity* in his home did not decline significantly. *Id.* at *8.

Similarly, in the present case, while Plaintiff did not specifically allege any factual support for its allegation that the value of his home did not decline significantly, Rule 8 does not require Plaintiff to plead such facts at this stage in the proceedings.  *See Brooks*, 578 F.3d at 581 (federal pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations").  Plaintiff will have the opportunity to demonstrate the factual basis for his allegation that the value of his home has not declined significantly during the discovery process.  Accordingly, the Court denies Defendant's Motion with respect to Count II.

### 2. Count IV – HELOC Reduction Notices

In Count IV, Plaintiff alleges that Defendant violated TILA and Regulation Z because the notices sent to Plaintiff and class members informing them of the reduction in their HELOCs did not contain "specific reasons" for the action taken.  (R. 1, Complaint, ¶ 53.)  Regulation Z states that "[i]f a creditor . . . reduces the credit limit applicable to a home equity plan . . . the creditor shall mail or deliver written notice of the action to each consumer who will be affected.  The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action.  If the creditor requires the consumer to request reinstatement of credit privileges, the notice also shall state that fact."  12 C.F.R. § 226.9(c)(3).

The notice Defendant sent to Plaintiff informing him of the reduction in his HELOC stated that Defendant was "lowering the credit limit of [Plaintiff's] Account to $31,039.83 *due to a substantial decline in the value of the property securing the Account*."  (R. 1-1, October 14, 2008 Letter, p. 1.)  Despite the emphasized language in the October 14, 2008 Letter, Plaintiff asserts that the notice does not contain "specific reasons" for the reduction because the notice did not disclose (i) the value of the property as determined by Defendant or how Defendant

determines that value, (ii) how Defendant determines "substantial decline in value," (iii) the methods or factors employed by Defendant's AVM models, (iv) the threshold property value required to reinstate the HELOC, and (v) other "necessary and material" information. (R. 1, Complaint, ¶ 54.)

Plaintiff, however, provides no persuasive support for his contention that the reason given by Defendant in its notice to Plaintiff is not sufficiently "specific" to meet the standards of TILA and Regulation Z. In fact, Regulation Z lists six specific scenarios under which a lender may reduce a borrower's credit limit, including "any period in which . . . [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the plan." 12 C.F.R. § 226.5b(f)(3)(vi)(A); *see also* Official Commentary, cmt. 5(b)(f)(vi)-4 ("[a] creditor may prohibit additional extensions of credit or reduce the credit limit in the circumstances specified in this section of the regulation"). The October 14, 2008 Letter thus specifically identifies a statutorily permissible reason for reducing Plaintiff's HELOC.

There are no requirements in TILA, Regulation Z or the Official Commentary that require Defendant to include any of the additional information Plaintiff cites in its Complaint. Indeed, the only authority cited by Plaintiff is a non-controlling Office of Thrift Supervision ("OTS") enforcement action notice of charges in which the OTS suggested that a lender's notice violated TILA because the notice, among other things, lacked documentation to support the lender's decision. (R. 30-1, Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition"), p. 10.) A review of the notice of charges in that matter reveals that the OTS determined that the lender violated Regulation Z when it refused to make advances on a series of HELOC loans. While the lender's notices informed borrowers that it had suspended advances on their HELOCs for "one or more" of the enumerated reasons contained in

Regulation Z, the notice did not specify which reason. Contrary to the face of the notice in this case, therefore, the notices in the OTS matter were devoid of a specific reason for the change in the HELOC terms.

Although the Court must view the facts alleged in the light most favorable to Plaintiff, here, the face of the October 14, 2008 Letter squarely contradicts Plaintiff's claim that Defendant did not provide a specific reason for the HELOC reduction. *See, e.g., Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 544 (7th Cir. 2007) (upholding district court's dismissal of plaintiff's Fair Credit Reporting Act claim where, after review of relevant letter, court concluded that the letter offered plaintiff a "fair offer of credit" in accordance with FCRA requirements). Accordingly, the Court dismisses Count IV of Plaintiff's Complaint with prejudice.

### 3. Count VI – Property Appraisals and Appeals Process

In Count VI, Plaintiff alleges that Defendant acted in violation of TILA and Regulation Z by requiring Plaintiff "to obtain and pay for property appraisals upfront in order to seek reinstatement as part of its 'appeals process.'" (R. 1, Complaint, ¶ 64.) In support of this claim, Plaintiff alleges that in addition to pushing the burden of seeking reimbursement onto HELOC borrowers, which Plaintiff recognizes is permissible pursuant to TILA and Regulation Z, Defendant also "intentionally shifted onto its customers the burden of obtaining and paying *upfront* for a property appraisal in an effort to discourage customers from seeking reinstatement of their original credit limits." *Id.* at ¶ 59. Plaintiff contends this violates TILA and Regulation Z because "only after the lender investigates may the lender charge the borrower bona fide and reasonable costs and appraisal fees." *Id.* at ¶ 58 (citing Official Commentary). Plaintiff's argument fails for two reasons. First, each of the statutory and regulatory provisions on which Plaintiff bases Count VI concern actions taken after a borrower requests reinstatement of its credit limit and Plaintiff has not alleged that he requested reinstatement. Second, Plaintiff has not alleged that Defendant demanded or collected any fees from Plaintiff or the class that Defendant did not incur.

As noted above, if a creditor reduces a borrower's HELOC limit, TILA requires the lender to provide written notice to the borrower informing the borrower of the reduction. 12 C.F.R. § 226.9(c). If the lender does not require the borrower to request reinstatement in its notice, the lender must monitor the line of credit on an ongoing basis to determine whether the conditions for the reduction still exist. *Id.* In the alternative, to avoid ongoing monitoring of the line of credit, the regulations also provide that "the creditor may shift the duty to the consumer to

request reinstatement of credit privileges." *Id.* "If the creditor requires the consumer to request reinstatement of credit privileges, the notice also shall state that fact." *Id.*

> The Official Commentary further explains these requirements as follows:
> Creditors are responsible for ensuring that credit privileges are restored as soon as reasonably possible after the condition that permitted the creditor's action ceases to exist. One way a creditor can meet this responsibility is to monitor the line on an ongoing basis to determine when the condition ceases to exist. . . . As an alternative to such monitoring, the creditor may shift the duty to the consumer to request reinstatement of credit privileges by providing a notice in accordance with §226.9(c)(1)(iii). A creditor may require a reinstatement request to be in writing if it notifies the consumer of this requirement on the notice provided under §226.9(c)(1)(iii). Once the consumer requests reinstatement, the creditor must promptly investigate to determine whether the condition allowing the freeze continues to exist. Under this alternative, the creditor has a duty to investigate only upon the consumer's request.

Official Commentary, cmt. 5b(f)(3)(vi)-4. If a lender takes steps to investigate a borrower's request, the Official Commentary further explains that "a creditor may collect only bona fide and reasonable appraisal and credit report fees if such fees are actually incurred in investigating whether the condition permitting the freeze continues to exist." Official Commentary, cmt. 5b(f)(3)(vi)-3. Moreover, a "creditor may not, in any circumstances, impose a fee to reinstate a credit line once the condition has been determined not to exist." *Id.*

As an initial matter, each of the regulatory provisions and official comments upon which Plaintiff bases Count VI of his Complaint control situations where a borrower has requested reinstatement. In this case, the parties do no dispute that Defendant chose to shift the burden to its customers to request reinstatement. (R. 1-1, October 14, 2008 Letter, p. 1.) Indeed, in accordance with 12 C.F.R. § 226.9(c)(3), Defendant's notice to Plaintiff provided instructions for Plaintiff to request reinstatement if Plaintiff believed that the reasons stated for the reduction in the October 14, 2008 Letter no longer existed or if the determination was in error. *Id.* Nowhere in Plaintiff's Complaint does Plaintiff allege that he requested reinstatement of his

HELOC. Instead, Plaintiff alleges that after receiving the reduction notice, he requested "the basis for Wells Fargo's decision." (R. 1, Complaint, ¶ 16). Thereafter, in a letter dated October 20, 2008, Defendant provided the requested information to Plaintiff. (R. 1-3, October 20, 2008 Letter.) The letter explained the valuation method employed by the Defendant (AVM), as well as the date and results of the AVM. *Id.* The provisions cited in Count VI therefore do not govern the conduct of the parties as alleged in the Complaint.

Even if Plaintiff could establish that he requested reinstatement, Count VI still fails to state a claim sufficient to survive a motion to dismiss. In Count VI, Plaintiff claims that Defendant violated the provision of the Official Commentary that only allows creditors to collect appraisal fees if such fees are actually incurred by the lender. (R. 1, Complaint, ¶ 39.) In Plaintiff's Opposition to the Motion, Plaintiff explains that Defendant "turns Regulation Z on its head and demands payment upfront before even attempting to satisfy its own legal obligations" and explains that this "practice of collecting upfront fees intentionally discourages customers from appealing the bank's HELCO reductions." (R. 30-1, Plaintiff's Opposition, p. 14.) Nowhere in the Complaint, however, does Plaintiff allege that Defendant ever demanded or collected payment from Plaintiff or any class member for fees that were not incurred by Defendant. While the Official Commentary reflects that a lender may not seek costs and appraisal fees from borrowers unless the lender has undertaken an investigation and incurred fees, Plaintiff never alleges that Defendant sought costs from Plaintiff that Defendant did not incur, or that Defendant failed to undertake an investigation.

Moreover, neither the statute, regulations nor Official Commentary contain any provisions prohibiting Defendant from "shifting the burden of obtaining and paying upfront for a property appraisal" to borrowers. To the contrary, by including language governing a lender's

ability to collect reimbursement from borrowers for appraisals, the Official Commentary reflects that the burden to pay for an appraisal may be placed on the borrower as long as the fees are bona fide and reasonable.  Accordingly, because the Complaint and its attachments reveal that Defendant complied with the relevant provisions of TILA and its implementing regulations and Plaintiff has not presented any allegations to the contrary, the Court dismisses Count VI of Plaintiff's Complaint for failure to state a claim with prejudice.  *See, e.g., Forrest*, 507 F.3d at 544 (upholding district court's dismissal of plaintiff's Fair Credit Reporting Act claim where, after review of relevant letter, court concluded that the letter offered plaintiff a "fair offer of credit" in accordance with FCRA requirements).

### B.     Declaratory Judgment – Counts I, III, and V

Plaintiff also seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that Defendant's mass HELOC reductions (Count I), letter notices to Plaintiff and the class (Count III), and shifting of the burden to obtains appraisals to Plaintiff and the class (Count V), violate TILA and Regulation Z.[2]  (R. 1, Complaint, p. 22.)  Defendant contends that the Court should dismiss Counts I, III, and V because (i) Plaintiff has not stated any viable claims pursuant to TILA and Regulation Z, and (ii) even if Plaintiff has successfully pled his claims, declaratory relief is not appropriate because it adds nothing to Plaintiff's claims for monetary damages.  Plaintiff contends that declaratory relief is appropriate because Defendant's violations of TILA and Regulation Z are ongoing and continuously affecting homeowners and it would be useful to determine the legitimacy of Defendant's HELOC

---

[2]   Plaintiff premises Counts I and II (HELOC reductions where no substantial decline in value has occurred), III and IV (deficiencies in letter notices sent to Plaintiff and the class), and V and VI (shifting of the burden to obtain appraisals) on the same factual allegations and TILA provisions.   In Counts I, III and V, Plaintiff seeks declaratory relief, and in Counts II, IV and VI Plaintiff seeks statutory damages.

reductions going forward. As an initial matter, because Plaintiff has not stated any viable claims with respect to Defendant's letter notices to Plaintiff and the class (Count IV) and Defendant's shifting of the burden to obtain appraisals to Plaintiff and the class (Count VI), Plaintiff's requests for declaratory relief in Counts III and V based on the same alleged statutory violations necessarily fail. Because Plaintiff has stated a viable claim based on Defendant's HELOC reductions (Count II), the Court must address Plaintiff's request for declaratory relief in Count I.

"To seek a declaratory judgment, a party must show that there is 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hoffman v. Sumner*, 478 F. Supp. 2d 1024, 1029 (N.D. Ill. 2007) (citing *In re VMS Sec. Litig.*, 103 F.3d 1317, 1327 (7th Cir. 1996)). "The primary purpose of [the Declaratory Judgment] Act is to avoid accrual of avoidable damages to one not certain of his rights and to afford him early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 340 (N.D. Ill. 2002) (citing *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167-68 (7th Cir. 1969)). However, "[i]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (U.S. 1995).

While there is no express prohibition against declaratory relief contained in TILA, the statute contains a comprehensive damages scheme, including actual damages, statutory damages, and attorneys' fees and costs. *See* 15 U.S.C. § 1640(b). Moreover, Plaintiff has not established in any of his three claims for declaratory relief that the remedies contained in TILA would be ineffective or inappropriate. *See, e.g., In re Trans Union Corp*, 211 F.R.D at 340 (dismissing a

15

claim for declaratory relief under the Fair Credit Reporting Act after finding that the claim "adds nothing to [plaintiff's] claims for monetary damages for the same violations"). Indeed, in his opposition, Plaintiff fails to offer any explanation for why TILA's statutory remedies are insufficient. District courts have discretion to deny declaratory relief when a more complete remedy is available. *Wilton*, 515 U.S. at 288 (1995); *see also In re VMS Sec. Litig.*, 103 F.3d at 1327 ("[e]ven when a district court has subject matter jurisdiction, it is not required to declare the rights and relations of parties); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) ("[i]t is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction"); *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975) ("[w]hile the availability of another remedy does not preclude declaratory relief, a court may properly decline to assume jurisdiction in a declaratory action when the other remedy would be more effective or appropriate"). Accordingly, because TILA presents comprehensive remedies to Plaintiff and the class, the Court dismisses Count I of Plaintiff's Complaint without prejudice.

For the foregoing reasons, the Court dismisses Count I of Plaintiff's Complaint without prejudice, and dismisses Counts III and V of Plaintiff's Complaint with prejudice.

### C. State Law Claims

Plaintiff's Complaint also asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, consumer fraud, and unjust enrichment. Illinois law governs these claims. (R. 1-2, Contract, § 24.) Defendant requests the Court to dismiss each of these state law claims. For the following reasons, the Court grants Defendant's Motion with respect to Counts VIII, X and XI, denies Defendant's Motion with respect to Count VII, and grants in part and denies in part Defendant's Motion with respect to Count X.

### 1. Counts VII and VIII – Breach of Contract

Plaintiff brings two claims for breach of contract. In Count VII, Plaintiff alleges that Defendant breached its Contract with Plaintiff by reducing Plaintiff's credit limit even though the value of Plaintiff's property did not decline significantly below its appraised value. In Count VIII, Plaintiff alleges that Defendant breached its Contract with Plaintiff by (i) continuing to assess Plaintiff and the class an annual fee for use of a HELOC account that Defendant had unilaterally decreased or suspended, and (ii) failing to provide Plaintiff and the class the use of the bargained-for credit limits under the HELOCs for the full term of their contracts.

To establish a breach of contract under Illinois law, a party must establish: (1) the existence of a valid and enforceable contract; (2) substantial performance of the contract; (3) breach of the contract; and (4) resultant damages. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). In Illinois, the determination of whether a contract is ambiguous, as well as the construction of an unambiguous contract, are questions of law for the court. *See Gallagher v. Lenart*, 226 Ill.2d 208, 219, 314 Ill.Dec. 133, 140, 874 N.E.2d 43, 50 (Ill. 2007); *Central Ill. Light Co. v. Home Ins. Co.*, 213

Ill.2d 141, 153-54, 290 Ill.Dec. 155, 163, 821 N.E.2d 206, 214 (Ill. 2004). "In Illinois, as in other states, if a contract is unambiguous, the court will enforce it as written, without resorting to extrinsic evidence." *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009). "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher*, 226 Ill.2d at 232. Illinois courts interpret contracts according to the "four corners" rule: "'[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined by the language used. It is not to be changed by extrinsic evidence.'" C*amico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992-93 (7th Cir. 2007) (quoting *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) (citations and internal quotation marks omitted)). In applying this rule, Illinois courts first look to the language of the contract alone. *See Camico*, 474 F.3d at 993 (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 462, 236 Ill.Dec. 8, 10, 706 N.E.2d 882, 884 (Ill. 1999)); *see also Gallagher*, 226 Ill.2d at 233 ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). Illinois courts interpret contract terms according to their plain meaning unless otherwise defined. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004).

The parties do not dispute the existence of a valid contract or substantial performance. Section 18 of the Contract provides that Defendant may "close [the] Account to future advances . . . [if] the value of the Property declines significantly below its original appraised value." (R. 1-2, Contract, § 18.) Plaintiff alleges that (i) Plaintiff performed under the Contract, (ii) Defendant materially breach Section 18 of the Contract by reducing Plaintiff's credit limit when no significant decline in value had occurred, and (iii) Defendant's breach damaged Plaintiff and

the class by, *inter alia*, denying them full use of their bargained for credit limits and negatively affecting their credit scores. Repeating the arguments it made in opposition to Count II of the Complaint, Defendant contends that Plaintiff's assertion that the property did not decline significantly in value is without factual support. As describe in detail above, however, Plaintiff's assertion complies with the federal pleading requirements. Based on the clear and unambiguous language of the Contract and the allegations contained in Plaintiff's Complaint, Plaintiff has alleged sufficient facts to make his breach of contract claim plausible. *See Brooks*, 578 F.3d at 581. Accordingly, the Court denies Defendant's motion to dismiss Count VII of Plaintiff's Complaint.

In Count VIII, Plaintiff argues that Defendant breached his Contract by charging him a $75 annual fee even after reducing his credit limit and by denying Plaintiff the bargained-for credit limit for the full 12-month period of the Contract. Section 18 of the Contract provides that, in the event of a closure or suspension of the account, Plaintiff "will continue to be responsible for full payment of the balance of [the] Account as well as all other account obligations, according to the terms of this Agreement." (R. 1-2, Contract, § 18.) In addition, Section 9 provides that each year the HELOC is open, "a $75 non-refundable Annual Fee will be charged to [Plaintiff's] account." *Id.* at § 9. Finally, the Contract also expressly contemplates that Defendant may reduce Plaintiff's credit limit. *Id.* at § 18.

The terms of the Contract contradict Plaintiff's allegations. Nothing in the Contract prohibits Defendant from assessing the $ 75 annual fee if Plaintiff's credit limit is reduced. Moreover, the Contract expressly indicates that Plaintiff's credit limit may be reduced during the term of the Contract, but that Plaintiff will still be responsible for all account obligations and fees. Plaintiff, therefore, has not pled any breach of contract based on Defendant's assessment of

the $75 annual fee. *See Thompson v. Illinois Dep't. of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (where a plaintiff "relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim"); *LaSalle Bank Nat'l Assoc v. Paramont Props.*, 588 F. Supp. 2d 840, 856 (N.D. Ill. 2008) (dismissing claim for breach of contract where no provision of the contract required the actions that plaintiff alleged were required of defendant). Accordingly, the Court dismisses Count VIII of Plaintiff's Complaint with prejudice.

### 2. Implied Covenant of Good Faith and Fair Dealing

In Count X, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by (i) reducing his credit limit even though there was no significant decline in the value of his property, and (ii) failing to follow TILA and Regulation Z, an implied term of the Contract, by shifting the reinstatement burden to Plaintiff.

To establish a breach of the duty of good faith and fair dealing under Illinois law, the complaining party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-45 (7th Cir. 1992); *Gore v. Indiana Ins. Co.*, 376 Ill. App. 3d 282, 876 N.E.2d 156, 161-62, 315 Ill. Dec. 156 (Ill. App. Ct. 2007) ("Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations.") (citations omitted)). "However,

the 'obligation of good faith that exists in every contractual relation' is 'not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document.' Rather 'good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting." *LaSalle Business Credit, Inc. v. Lapides*, 2003 WL 722237, 2003 U.S. Dist. LEXIS 2901, *15 (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990)). "Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of the contract." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395-96 (7th Cir. 2003).

While Plaintiff has alleged that the Contract gave Defendant discretion to determine whether a significant decline in value occurred, and that Defendant abused this discretion, Defendant's contention that Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing is correct. While all Illinois contracts contain an implied obligation to act in good faith, this obligation does not provide a person with a separate, independent cause of action. *LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 565 (7th Cir. 1991). Indeed, courts regularly dismiss causes of action for breach of duty of good faith when they are not asserted *within* a breach of contract claim. *See, e.g., Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740, 2006 U.S. Dist. LEXIS 26141, *24-*25 (N.D. Ind. Mar. 16, 2006) (dismissing Plaintiff's claim for breach of Illinois implied covenant of good faith and fair dealing where claim was pled as an independent claim and not as part of the breach of contract count); *see also Aggarwal v. Nokia Corp. (In re Wireless Tel. 911 Calls Litig.)*, 2005 WL 1564978, 2005 U.S. Dist. LEXIS 13707 (N.D. Ill. June 3, 2005) (dismissing claim for breach of covenant "where plaintiffs have already asserted a separate breach of contract claim"

and "claim for breach of the implied covenant of good faith and fair dealing" is rendered "superfluous"); *Miller v. Ford Motor Co.*, 152 F. Supp. 2d 1046 (N.D. Ill. 2001) (dismissing claim for breach of covenant of good faith and fair dealing where breach of contract claim subsumes allegations in support of breach of covenant claim and no independent cause of action exists). In fact, the Seventh Circuit has approved of such dismissals. *See Zeidler v. A&W Restaurants, Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("we note that the district court correctly dismissed on the pleadings the [plaintiff]'s remaining claim that [defendant] breached an independent covenant of good faith and fair dealing" because "[t]he covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law").

In this case, Plaintiff has alleged an independent cause of action for breach of contract based on the same allegations on which Plaintiff premises his breach of the duty of good faith and fair dealing claim. The duty of good faith, however, does not provide Plaintiff with an independent cause of action. The Court accordingly dismisses Count X of Plaintiff's Complaint with prejudice.

### 3.       Illinois Consumer Fraud Act

In Count IX, Plaintiff brings a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et. seq.*, for deceptive and unfair practices. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416-17, 266 Ill.Dec. 879, 775 N.E.2d 951 (Ill. 2002). The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a

course of conduct involving trade or commerce. *See id.* at 417; *see also Rickher v. Home Depot, Inc.*, 535 F.3d 661, 665 (7th Cir. 2008). In addition, "a private cause of action under ICFA requires a showing of proximate causation." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 200, 296 Ill.Dec. 448, 835 N.E.2d 801 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the Act."). The proximate causation requirement applies to both misrepresentation and omission claims under the ICFA. *See Avery*, 216 Ill.2d at 202; *see also Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944-45 (7th Cir. 2005).

Plaintiff alleges that Defendant's statements and conduct violate the ICFA in three ways: (i) Defendant's statements regarding the availability of credit through HELOCs were false; (ii) Defendant's conduct in employing AVM models that were inaccurate and unsubstantiated was deceptive and unfair; and (iii) Defendant's conduct in depriving borrowers of necessary information regarding credit reinstatement was deceptive and unfair. (R. 1, Complaint, ¶¶85-87.) Defendant does not take issue with whether Plaintiff has sufficiently pled the elements of an ICFA claim. Instead, Defendant premises its Motion on its contentions that (i) Plaintiff's fraud claims are not pled with particularity as required by Rule 9(b), and (ii) TILA compliance is a bar to ICFA claims.

With respect to the first basis for Plaintiff's ICFA claim, Defendant's statements regarding the availability of credit through HELOCs, the Court dismisses Plaintiff's claim without prejudice because Plaintiff has failed to plead the necessary elements of a fraud claim. When plaintiffs allege fraud, Federal Rule of Civil Procedure 9(b) imposes the additional requirement that "the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Particularity requires plaintiffs "to plead in detail the 'who,

what, when, where, and how' of the circumstances constituting the fraud." *See Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 792 (N.D. Ill. 1997) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). That is, plaintiffs must plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (quoting *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082-83 (7th Cir. 1997)). Plaintiffs, however, need not plead information "uniquely within the defendant's knowledge." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 n.5 (7th Cir. 1994). This particularity requirement applies to Plaintiff's ICFA claim. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (consumer fraud claims must be pled with the specificity required by Rule 9(b)).

Plaintiff has failed to plead the elements of a fraud claim with the requisite particularity. With respect to Defendant's statements regarding the availability of credit through the HELOCs, Plaintiff points to only one specific statement made by Defendant. Plaintiff alleges Defendant's false statements "include[d] that any potential future reduction of credit through the HELOCs would only occur through a substantial decline in property value." (R. 1, Complaint, ¶ 85.) Plaintiff, however, does not identify who made this statement, or when or where it was made. Indeed, in its Opposition to the Motion, Plaintiff states that the Complaint "sets forth allegations that Wells Fargo (the "who") makes false statements as to the legality of its credit limit reductions and the availability of credit (the "what") to its borrowers in letters and telephone calls (the "where") at the time Wells Fargo's HELOC reduction and suspension letters are sent and when customers call Wells Fargo's customer service representatives (the "when")." (R. 30-1, Plaintiff's Opposition, p. 15.) Plaintiff cites fourteen paragraphs of its Complaint to support

this contention.  A review of those paragraphs and the remainder of the Complaint, however, reveals that Plaintiff has not indentified any specific "statements" by Defendant regarding the *legality* of their credit limit reductions or the *availability* of credit.

In addition to failing to identify which statements he contends were false, Plaintiff also fails to allege who made the particular statements.  While Plaintiff has included allegations in his Complaint regarding letters exchanged and phone calls with Defendant, Plaintiff does not cite specifically to those allegations to support its claim.  Accordingly, it is unclear which statements form the basis of Plaintiff's fraud claim, when those statements were made, or by whom. Plaintiff has therefore failed to plead his fraud claim with respect to Defendant's alleged statements regarding the HELOCs with particularity, and the Court accordingly dismisses this portion of Count IX of the Complaint without prejudice with leave to replead.  *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 669 (7th Cir. 2008) ("the district court correctly determined that the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud"); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007) (finding that "[a]lthough the plaintiffs offer a few details about the content of the alleged deceptive statements--that the defendants falsely stated that the plaintiffs' food would be stored in sanitary conditions and would be returned on request--overall the allegations are too general to satisfy the heightened pleading requirements for claims of fraud" and that "Rule 9(b) requires specifics such as the name of the individual who made the statement, the specific date statement was made, to whom the statement was made, and the date of the statement").

Plaintiff's additional two claims under the ICFA, however, are premised on unfair and deceptive business practices, not fraudulent representations. The Seventh Circuit has held that "[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc.*, 536 F.3d at 670. To determine whether conduct is unfair under the ICFA, a court must determine whether a plaintiff has established one of the following: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Id.* at 669.

Plaintiff has sufficiently pled his second claim for unfair practices under the ICFA by alleging that Defendant's conduct in reducing borrower's HELOC limits without a sufficient factual basis and using faulty and inaccurate AVMs was "unfair, immoral and unscrupulous." (R. 1, Complaint, ¶ 86.) Plaintiff alleges that Defendant intentionally used faulty and unreliable AVM models to provide misleading bases for reducing credit limit to consumers and that Defendant intentionally deprived borrowers of critical information in contravention of TILA and Regulation Z to discourage borrowers from seeking reinstatement of their HELOC limits. *Id.* at ¶¶ 86-87. Plaintiff also alleges that these practices occurred in commerce. *Id.* at ¶ 84. Indeed, Defendant does not contest that Plaintiff has stated the elements for a claim of unfair practices under the ICFA. Accordingly, the Court declines to dismiss Plaintiff's claim for unfair practices regarding Defendant's use of AVM models under the ICFA.

Plaintiff's third ICFA claim with respect to depriving borrowers of critical information needed to determine whether to seek credit reinstatement, however, fails. The Seventh Circuit has held that compliance with statutory requirements contained in TILA is a defense under the

ICFA. *Hoffman v. Grossinger Motor Corp.*, 218 F.3d 680, 684 (7th Cir. 2000) (citing *Lanier v. Associates Fin., Inc.*, 114 Ill. 2d 1, 499 N.E.2d 440, 447, 101 Ill. Dec. 852 (Ill. 1986)).  This portion of Plaintiff's ICFA claim is derivative of Count IV.  Here, Plaintiff again contends that Defendant's conduct in shifting the reinstatement burden onto Plaintiff and the class was a violation of TILA and Regulation Z and also deceptive and unfair in violation of the ICFA.  As detailed above, however, Plaintiff's Complaint does not present any allegations establishing that Defendant's actions improperly shifted a burden to Plaintiff and the class in violation of TILA or Regulation Z.  Accordingly, because the allegations in Plaintiff's Complaint establish that Defendant complied with the relevant notice and reinstatement provisions established by TILA, Regulation Z, and the Official Commentary, the Court dismisses Plaintiff's deceptive practices claim based on the same allegations with prejudice.  *See id.* (ICFA claim rightly dismissed where Defendant established compliance with relevant requirements in the federal Truth in Lending Act); *Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 828 (N.D. Ill. 2008) (dismissing ICFA claim for failure to state a claim where defendants' practices comply with TILA).

For the foregoing reasons, the Court dismisses Plaintiff's ICFA claims with respect to Defendant's statement regarding the availability of credit thought HELOCs without prejudice, (R. 1, Complaint, ¶ 85), and dismisses Plaintiff's ICFA claims with respect to Defendant's conduct in depriving borrowers of critical information needed to determine whether to seek credit reinstatement with prejudice, *id.* at ¶ 87.  The Court denies Defendant's Motion with respect to Plaintiff's allegations of deceptive and unfair business practices premised on Defendant's use of AVM models.  *Id.* at ¶ 86.

### 4.    Unjust Enrichment

Plaintiff's Complaint also contains a count for unjust enrichment.    Plaintiff premises his unjust enrichment claim on the following allegations:  (i) Defendant appreciated the benefits of utilizing improper valuation methods and requiring Plaintiff and the class to pay for appraisals; (ii) Defendant retained money that it should have provided to customers through their HELOCs by unlawfully reducing credit limits; and (iii) Defendant obtained benefits by continuing to assess and retain annual fees paid by Plaintiff and the class even though it unjustly reduced their HELOCs.  (R. 1, Complaint, ¶¶ 101-104.)

"The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies."  *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill.App.3d 1017, 1024, 329 Ill.Dec. 82 905 N.E.2d 920 (Ill. App. Ct. 2009).  To establish an unjust enrichment claim under Illinois common law, a plaintiff must show that (1) the defendant has "unjustly retained a benefit to the plaintiff's detriment," and (2) the defendant's "retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672 (Ill. 1989).  "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty."  *Martis*, 388 Ill.App.3d at 1025.  In other words, unjust enrichment "is not a separate cause of action that, standing alone, would justify an action for recovery."  *Mulligan v. QVC*, Inc., 382 Ill.App.3d 620, 631, 321 Ill.Dec. 257, 888 N.E.2d 1190 (Ill. App. Ct. 2008). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct."  *Martis*, 388 Ill.App.3d at 1024-25.

Under Illinois law, however, a cause of action for unjust enrichment is unavailable where, as here, the parties have entered into a contract which governs the dispute. *See Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 541 (7th Cir. 2008) (applying Illinois law); *see also Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 296 Ill. Dec. 930, 953, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) ("where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application"); *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 566-67, 281 Ill. Dec. 873, 805 N.E.2d 241 (Ill. App. Ct. 2004) ("[t]he theory of unjust enrichment is an equitable remedy based upon a contract implied in law," and a cause of action for "unjust enrichment is only available when there is no adequate remedy at law"). Here, Plaintiff's Contract with Defendant governs each of the premises that support Plaintiff's claim for unjust enrichment, including the circumstances in which Defendant may reduce or freeze Plaintiff's HELOC, Defendant's imposition of an annual fee, and reinstatement of credit. (R. 1-2, Contract, §§ 9, 18-19.)

Indeed, Plaintiff appears to concede that he cannot plead an unjust enrichment claim based on the same allegations as his claims for breach of Contract and instead alleges and argues that he has pled his unjust enrichment claim in the alternative. (R. 1, Complaint, ¶ 100.) This argument also fails. While a party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned, if there is no dispute over the existence of a contract, a claim for unjust enrichment necessarily fails. *Cromeens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("a plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties"). Here, the parties do not contest the existence of a valid, enforceable contract between the parties. (R. 1, Complaint, ¶ 68) ("The terms of these HELOCs constitute a contract between the Class

members and Defendant"); (R. 21-1, Defendant's Answer, ¶ 68 ) ("Wells Fargo admits that the HELOC Agreement is a contract between Plaintiff and Wells Fargo."). Accordingly, Plaintiff's claim for unjust enrichment is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion. The Court dismisses Count I without prejudice. The Court dismisses Counts III, IV, V, VI, VIII, X, and XI with prejudice. The Court grants in part and denies in part Defendant's Motion with respect to Count IX. The Court denies Defendant's Motion with respect to Counts II and VII. Plaintiff is to file an Amended Complaint consistent with this opinion on or before February 15, 2010.

DATED: January 26, 2010 ENTERED

AMY J. ST EVE
United States District Court Judge