## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL HICKMAN, an individual, on his own behalf and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 09-cv-5090 |
| v. | ) ) | Honorable Amy J. St. Eve |
| WELLS FARGO BANK N.A., | ) ) | |
| Defendant. | ) | |

### SECOND AMENDED CLASS ACTION COMPLAINT

Michael Hickman ("Hickman" or "Plaintiff"), individually and on behalf of all others similarly situated, for his second amended class action complaint against Defendant Wells Fargo Bank N.A. ("Wells Fargo" or "Defendant"), alleges as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon personal knowledge.

### Introduction

1. This case is about Defendant Wells Fargo's illegal reduction of credit limits on home equity lines of credit ("HELOCs") across the country in a transparent and illegal attempt to limit its exposure to the troubled United States housing market by breaking its promises to homeowners who obtained credit from Defendant. Defendant originated and owns billions of dollars of prime and subprime mortgages, including the HELOCs at issue in this Complaint.

2. Plaintiff Hickman, and each member of the purported class, had a HELOC for which Defendant suspended or reduced the available credit in a manner that was both illegal and grossly unfair. As a result of Defendant's wrongful actions, Plaintiff brings this class action on behalf of himself and the putative class for declaratory relief, actual damages, and attorneys' fees

under the Truth-in-Lending Act (15 U.S.C. § 1640(a)), damages for breach of contract, and

damages, injunctive and equitable relief under the Illinois Consumer Fraud and Deceptive

Business Practices Act (815 ILCS 505/1 *et seq.* (2000)).

**Nature of the Claim**

3.       As early as October 2008, Defendant began to send form letters to thousands of

its HELOC customers, summarily lowering their lines of credit.  Defendant's letter to Plaintiff

specifically stated:

> Wells Fargo has recently reviewed your Home Equity Account referenced above
> (your "Account").  According to your Home Equity Line of Credit Agreement, if
> the value of the property securing the Account significantly declines, Wells Fargo
> may lower the credit limit on your Account.

> Based on this review, we are lowering the credit limit of your Account to
> $31,039.83 *due to a substantial decline in the value of the property securing the
> Account.*

(*See* "Notice of HELOC Reduction" letter, a true and accurate copy of which is attached as

Exhibit A).  Defendant did not perform any type of individualized assessment of Hickman's or

its other customers' home values to determine depreciation, but rather, on information and belief,

Defendant determined property values through dubious automated formulas, commonly known

as Automated Valuation Models ("AVMs"), with unreliable or inaccurate analyses designed to

reach a predetermined result.  In fact, Defendant sent this letter and suspended or reduced the

limit on HELOCs to many homeowners, including Plaintiff, whose home value had not

significantly declined.

4.       Defendant's systematic mass reduction of HELOC limits was unlawful.  While

federal law permits Defendant to reduce a credit limit if the individual property securing the

HELOC loses a significant amount of its value, federal law prohibits a lender from reducing the

credit limit without first assessing the value of the specific property or reducing a credit limit in

2

the absence of a significant decline in value of the specific property. Additionally, federal regulators have warned financial institutions that it would violate federal law to reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that individually secures each affected HELOC account. *Office of Thrift Supervision: Guidance on Home Equity Lines of Credit*, OTS 08 038 (Aug. 26, 2008).

5.      The letter sent by Wells Fargo to Plaintiff and the other class members indicated that the original credit limits could be reinstated if, in fact, the reason provided by Wells Fargo for the reduction "no longer exists or is in error." However, the letter did not provide HELOC customers with the most important information: the value of their respective homes (as determined by Wells Fargo), how that property value was determined, or even what property value would be required to reinstate the full credit limit. Thus, the notice of credit limit reduction provided by Wells Fargo failed to include sufficient information for a customer to determine whether he or she should challenge the credit reduction and spend the time and resources to obtain and pay for an appraisal.

6.      In addition to Defendant's mass HELOC reductions being illegal, they are unconscionable in light of Defendant's receipt of billions of dollars in taxpayer funds. Congress passed the Emergency Economic Stabilization Act of 2008, Pub.L. No. 110-343, on October 3, 2008. As part of this law, Defendant obtained, on information and belief, approximately $25 billion from an unprecedented $700 billion bailout funded by American taxpayers. The rationale advanced for the bailout was that banks like Defendant needed liquidity in the face of the worsening subprime mortgage crisis and that such liquidity would be necessary to ensure the continued flow of credit to consumers. On the contrary, Defendant has deprived its customers of

3

crucial affordable consumer credit at a critical time, even though its customers continue to meet their mortgage obligations in this faltering economy. Defendant's conduct is especially troubling given the significant role it played in the subprime mortgage fiasco and the recent turbulence in the housing market in particular.

7.      Defendant's actions with respect to Plaintiff were particularly unwarranted and insulting in light of the fact that, on January 26, 2009, approximately three months *after* Wells Fargo slashed his HELOC credit limit due to a purported decrease in the value of his home, Hickman received an unsolicited notice indicating that his Wells Fargo Visa credit card spending limit had been *increased* 25% from $20,000 to $24,000.

### Parties

8.      **Plaintiff Michael Hickman:**  Michael Hickman is a resident of Westmont, Illinois.  Starting in approximately May 2006, Hickman had a HELOC from Defendant in the amount of $75,000 secured by his personal residence.  On or about October 14, 2008, Defendant sent Hickman a letter indicating that Wells Fargo had reduced the HELOC to $31,039.83, his approximate outstanding balance at the time.  (Ex. A.)

9.      **Defendant Wells Fargo:**  Wells Fargo Bank, N.A. is a national banking association, chartered in Sioux Falls, South Dakota, with its main offices at 420 Montgomery St. San Francisco, CA 94163.  Wells Fargo is one of the country's largest banks and has offices throughout the country.

### Jurisdiction and Venue

10.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendant.  On information and belief, the aggregate of these claims

exceeds the sum or value of $5,000,000.

11.     Wells Fargo is a national banking association whose main offices are in California

and is considered a citizen of California under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v.*

*Schmidt*, 546 U.S. 303 (2006).  Plaintiff is a citizen of Illinois.

12.     This Court further has federal question subject matter jurisdiction under 28 U.S.C.

§ 1331, as this action arises in significant part under Regulation Z of the Truth-in-Lending Act,

15 U.S.C. § 1601 *et seq.*, 15 U.S.C. § 1640(e), and 12 C.F.R. § 226.5(b).  Supplemental

jurisdiction over Plaintiff's state and common law claims is proper under 28 U.S.C. §1367.

13.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(2), as Plaintiff's

property is located in this District and a substantial part of the events, circumstances, and/or

omissions giving rise to these claims occurred in this District.  Venue is also proper before this

Court under 28 U.S.C. § 1391(c).

### Allegations as to Plaintiff's Individual Claims

14.     Defendant and Hickman entered into a HELOC agreement in May 2006.  A true

and accurate copy of the HELOC agreement is attached as Exhibit B.  Under the terms of the

HELOC, Defendant provided Hickman a $75,000 line of credit.  Hickman's HELOC was

obtained primarily for personal, family and/or household purposes and was secured by a

mortgage on his primary residence, which is located in Illinois.

15.     On October 14, 2008, Defendant mailed Hickman a letter indicating that

Defendant had reduced Hickman's credit limit by more than $40,000, or by nearly 60%—to just

over his balance at the time.  The letter stated that Defendant was lowering the credit limit "due

to a substantial decline in the value of the property securing the Account."  (Ex. A).

16.     Hickman contacted Wells Fargo and requested the basis for Wells Fargo's

decision.  On October 20, 2008, Wells Fargo responded that the "valuation" used was obtained via an AVM, that the date of the valuation was May 1, 2008, and that the property value at that time was $531,000.  (*See* October 20, 2008 "Letter to M. Hickman," a true and accurate copy of which is attached as Exhibit C.)

17.     Hickman's HELOC with Defendant was his primary line of credit.  Defendant's reduction of the credit limit on Hickman's HELOC denied Hickman access to credit and dramatically increased the ratio of credit Hickman used to the amount of credit Hickman had available to him.  In turn, on information and belief, Defendant's acts drove up his Credit Utilization Rate ("CUR"), a major component of his credit rating, thereby damaging Hickman's credit rating and increasing the cost of credit to him.

**Class Certification Allegations**

18.     Plaintiff seeks certification of a class under both Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

19.     **Definition of the Class:**  Pursuant to F.R.C.P. 23, Hickman brings this Complaint against Defendant on behalf of a class (the "Class") of all persons nationwide:

(a)     who had a HELOC with Defendant; and

(b)     whose HELOC was reduced or frozen by Defendant; and

(c)     who received a letter from Defendant which stated that the HELOCs were reduced "due to a substantial decline in the value of the property securing the Account," or words to that effect.

Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parent companies have a controlling

6

interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

20.     **Numerosity:**  The exact number of the members of the Class is unknown and not available to Hickman, but it is clear that individual joinder is impracticable.  Defendant sent its generic credit line reduction letters to thousands of mortgagors, and a substantial percentage of the recipients of these letters fall into the definition of the Class.  Class members can be easily identified through Defendant's records and public records.

21.     **Commonality:**  Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a)     What were Defendant's criteria for reducing the credit limits on its HELOCs;

(b)     What were Defendant's methods for valuing the subject properties securing the HELOCs;

(c)     Whether Defendant's reduction of the credit limits of the HELOCs violated the Truth-in-Lending Act and related regulations;

(d)     Whether Defendant's reduction of the credit limits breached the terms of its HELOC agreements with Class members;

(e)     Whether Defendant's reduction of the credit limits on its HELOCs violated the Illinois Consumer Fraud Act;

(f)     Whether Defendant's reduction of the credit limits on its HELOCs was unfair; and

(g)     Whether Plaintiff and the Class are entitled to relief, and the nature of such relief.

22.     **Typicality:**  Plaintiff's claims are typical of the claims of other members of the Class, as Plaintiff and other Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to Hickman and the public.

23.     **Adequate Representation:**  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in complex class actions.  Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

24.     **Predominance and Superiority:**  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant.  It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendant.  Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

25.     **Policies Generally Applicable to the Class:**  This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to

the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

with respect to the Class as a whole.  The policies of Defendant challenged herein apply and

affect members of the Class, and Plaintiff's challenge of these policies hinges on Defendant's

conduct, not on facts or law applicable only to Plaintiff.

### Count I:  Violation of TILA and Regulation Z
### (On behalf of Hickman and the Class)

26.     Plaintiff incorporates Paragraphs 1 through 25 as if fully set forth herein.

27.     The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation

Z) prohibit Defendant from changing any of the terms of a mortgage or HELOC – including the

credit limit.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).  There is a relevant exception

under TILA and Regulation Z for "any period in which the value of the consumer's principal

dwelling which secures any outstanding balance is significantly less than the original appraisal

value of the dwelling" which permits Defendant to reduce the credit limits on its HELOCs.  15

U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

28.     TILA and Regulation Z prohibit Wells Fargo from reducing the credit limits or

freezing its HELOCs unless the value of the home securing the credit line has actually declined

significantly.  The Federal Reserve Board's Official Staff Commentary to Regulation Z defines

"significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value so that "the

initial difference between the credit limit and the available equity (based on the property's

appraised value for the purposes of the plan is reduced by fifty percent."  The Official Staff

Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal

before suspending credit privileges [but] a significant decline must occur before suspension can

occur."  On August 26, 2008, the Office of Thrift Supervision issued official guidance that

warned it would violate Regulation Z to "reduce the credit limits of all HELOC accounts in a

geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account." *Office of Thrift Supervision: Guidance on Home Equity Lines of Credit*, OTS 08 038 (Aug. 26, 2008).

29.     Wells Fargo violated TILA and Regulation Z by reducing Hickman's HELOC limit, and those of the other Class members, in the absence of any "significant decline" in the value of the subject properties.  On information and belief, neither Hickman's property nor the property of the Class members has significantly declined in value.

30.     Rather, upon information and belief, Defendant knowingly and intentionally used a variety of dubious formulas and fundamentally unreliable data (including the general decline of property values in broad geographic areas and other mathematical inputs) to value its customers' homes in order to justify blanket reductions on its HELOC limits.  Upon information and belief, the methodology used with respect to Defendant's AVM HELOC modeling is inaccurate and unsubstantiated, making its use unfair, deceptive, and readily subject to manipulation.

31.     On information and belief, Wells Fargo or its agents acting under Wells Fargo's direction and control, failed to, among other acts or omissions:  (a) disclose the reasoning and basis behind the use of the AVM-derived property value; (b) disclose the value necessary to reinstate the HELOCs; (c) validate their AVMs on a periodic basis to mitigate the potential valuation uncertainty; (d) properly document the AVM's analysis, assumptions, and conclusions; (e) appropriately back-test representative samples of the AVMs against market data on actual sales; (f) account fairly for improvements, property type, or geographic comparables; and/or (g) take other necessary steps to reasonably verify the accuracy of the AVMs.

32.     Additionally, Wells Fargo further violated TILA and Regulation Z by failing to reduce credit limits only during a period of time where there had been a significant decline in

property values.  Hickman's credit line was reduced on October 14, 2008.  However, when

Hickman asked for more details about such action, Wells Fargo stated that the AVM-generated

valuation was conducted on May 1, 2008 – over five months earlier.  Thus, even if Hickman's

property did experience a significant decline in value (which it did not), Wells Fargo lacked any

reasonable factual basis to conclude that any such significant decline was still in effect during the

period in which it reduced the credit limit – over five months later and beyond.  Upon

information and belief, Wells Fargo reduced the credit limits of the Class members several

months after the AVM valuations were conducted and, therefore, no longer during the period

when any purported "significant" decline was in effect.

33.     Defendant's failure to specifically value the property of each Class member,

failure to use a reliable valuation method, and failure to reduce credit limits only during the

period of a "significant decline" in property value constitute violations of TILA and Regulation

Z.

34.     Wells Fargo's violations of TILA and Regulation Z damaged Hickman and the

other Class members.  These damages occurred in the form of denial of the full use of the

bargained-for benefit of the HELOCs, appraisal fees, increased price of credit, adverse effects on

credit scores, loss of interest, and other damages.

35.     Hickman, on his own behalf and on behalf of the other Class members, seeks

actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. §

1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. §

1640(a)(3), in an amount to be determined at trial.

### Count II:  Declaratory Relief Under TILA and Regulation Z
**(On behalf of Hickman and the Class, in the alternative to Count I)**

36.     Plaintiff incorporates Paragraphs 1 through 35 as if fully set forth herein.

37.     Plaintiff brings this Count in the alternative to Count I and seeks declaratory relief in the event this Court finds at any time that damages or other remedies under TILA, as prayed for in Count I, would be inadequate to fully compensate Plaintiff and the Class members or would otherwise be inadequate to fully address Wells Fargo's ongoing or future violations of TILA with respect to its existing and future borrowers.

38.     Defendant reduced the credit limit for Hickman and other Class members' HELOCs.  Contrary to Defendant's purported explanation, the homes securing the HELOCs for Hickman and other Class members did not significantly decline in value.  Wells Fargo also used improper formulas and relied on fundamentally unreliable data to value its mortgagors' homes in order to justify blanket reductions on its HELOC limits.

39.     Defendant's reduction of the credit limit for Hickman and other Class members' HELOCs violated TILA and Regulation Z.

40.     The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction of HELOC credit limits and improper property valuation techniques violate TILA and Regulation Z.

41.     In the event this Court should at any time find that damages or other remedies under TILA would be inadequate to fully compensate Plaintiff and the Class members or would be inadequate to otherwise fully address Wells Fargo's ongoing or future violations of TILA, Hickman, on his own behalf and on behalf of the other Class members, seeks a declaratory judgment under 27 U.S.C. § 2201 that Wells Fargo's mass reduction of HELOC credit limits in the absence of a significant decline in property value violates TILA and Regulation Z.

## Count III:  Breach of Contract
### (On behalf of Hickman and the Class)

42.      Plaintiff incorporates Paragraphs 1 through 41 as if fully set forth herein.

43.      Hickman and the other Class members obtained HELOCs from Defendant.  The terms of these HELOCs constitute a contract between the Class members and Defendant.

44.      The Defendant's HELOC agreements contain a term that purports to permit it discretion to reduce the credit limit if  "(c) the value of the [property securing the HELOC] declines significantly below [the property's] original appraised value."  Defendant drafted the HELOCs, and the phrase "declines significantly" should be construed against Defendant. (Ex. B.)

45.      Hickman and the other Class members performed in full under their HELOC agreements with Defendant.  They made the payments due to Defendant under the HELOC agreements and otherwise complied with the terms of the HELOC agreements.

46.      The credit limit under the Class members' HELOC agreements was a material term of the contract between Class members and Defendant.  Defendant materially breached the terms of the HELOC agreements by reducing the credit limit for Hickman's and the other Class members' HELOCs where no significant decline in value had first occurred.

47.      Hickman and the other Class members have suffered damages in the form of being denied the full use of the bargained-for credit limits, appraisal fees, the increased price of credit, adverse effects on their credit score, loss of interest, and other damages.

48.      Hickman, on his own behalf and behalf of the other Class members, seeks actual and compensatory damages for Defendant's breach of contract, as well as interest, attorneys' fees, and costs in an amount to be determined at trial.

13

**Count IV:  Violation of the Illinois Consumer Fraud Act (815 ILCS 505/2 *et. seq.*)**
**(On behalf of Hickman and the Class)**

49.     Plaintiff incorporates Paragraphs 1 through 48 as if fully set forth herein.

50.     Defendant's wrongful acts, as set forth throughout this Amended Complaint, constitute unfair business practices and unfair methods of conduct and competition with the intent that consumers will rely on the unfair practices and conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.  815 ILCS 505/2 *et. seq.* ("Consumer Fraud Act").

51.     Defendant's unfair and unlawful acts have occurred in commerce and have caused serious and irreparable injury to Plaintiff and the Class, and unless restrained by this Court will continue to cause further injury.

52.     Wells Fargo's conduct was unfair, as the AVMs it utilized to determine the values of the subject properties of the Class members securing the HELOCs were, on information and belief, without a sound factual basis and were inaccurate and unsubstantiated so as to make their use unfair and readily subject to manipulation.  Upon information and belief, Wells Fargo intentionally utilized faulty and unreliable AVMs in order to minimize the property values of its customers and provide a false and misleading basis for reducing credit limits.  These unfair, immoral and unscrupulous acts and practices constitute unfair business practices in violation of the Illinois Consumer Fraud Act.

53.     As a direct and proximate result of the unfair, unscrupulous and unconscionable practices of Defendant set forth above, Plaintiff and the Class are entitled to actual and compensatory damages, penalties, attorneys' fees, and costs as set forth in §10(a) of the Illinois Consumer Fraud Act, 815 ILCS 505/10(a), in an amount to be determined at trial.

**Count V:  Violation of the Illinois Consumer Fraud Act (815 ILCS 505/2 *et. seq.*)**
**(On behalf of Hickman and the Class)**

54.     Plaintiff incorporates Paragraphs 1 through 53 as if fully set forth herein.

55.     Defendant's wrongful acts, as set forth throughout this Amended Complaint, constitute deceptive business practices, misrepresentation, and concealment, suppression or omission of material facts with the intent that consumers will rely on the concealment, suppression or omission of the material facts in violation of the Consumer Fraud Act.  815 ILCS 505/2 *et. seq*.

56.     Defendant's unlawful acts have occurred in commerce and have caused serious and irreparable injury to Plaintiff and the Class, and unless restrained by this Court will continue to cause further injury.

57.      Wells Fargo made a false statement of material fact in its October 14, 2008 Notice of HELOC Reduction letter to Hickman.  (Ex. A.)  In that letter, Defendant represented that Hickman's property that secured the HELOC had substantially declined in value.  (Ex. A.)  This representation was false, as for the reasons set forth in this Amended Complaint, Hickman's property had, in fact, not significantly declined in value.  Similar letters containing nearly identical – and false – representations were sent to the other Class members.  Upon information and belief, Wells Fargo knew or should have known at the time of making this representation that such a representation was false, that Wells Fargo's AVMs were inaccurate, that Hickman's and the Class members' properties had not declined in value significantly, and that Wells Fargo lacked a sound factual basis for concluding otherwise.  Additionally, with respect to Hickman, Wells Fargo knew that the AVM valuation on which it based the account reduction was obtained nearly five months earlier and, thus, that it did not have a sound factual basis for representing

that Hickman's property had significantly declined in value as of the date of the reduction of his credit line.

58.　　Nevertheless, on information and belief, Wells Fargo made this misrepresentation intentionally in an effort to falsely trigger its right to reduce Hickman's and Class members' HELOC limits. Wells Fargo knew and intended that its customers would rely on its misrepresentations, and such misrepresentations were likely to deceive reasonable HELOC borrowers into believing that their home values did in fact decline in value significantly and were further likely to prevent or limit appeals of Wells Fargo's account suspensions and reductions. Indeed, in reliance on Wells Fargo's misrepresentation that his home value declined significantly, Hickman forewent appealing Wells Fargo's decision to reduce his HELOC and thus incurred significant damages, including the lost use of the bargained-for credit line.

59.　　As a direct and proximate result of the deceptive, unscrupulous and unconscionable practices of Defendant set forth above, Plaintiff and the Class are entitled to actual and compensatory damages, penalties, attorneys' fees, and costs as set forth in §10(a) of the Illinois Consumer Fraud Act, 815 ILCS 505/10(a), in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant Wells Fargo and enter an Order:

(a)　　Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class;

(b)　　Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Count I;

(c)　　Entering declaratory judgment under 27 U.S.C. § 2201 on Count II that Defendant's HELC reductions violate federal law;

(d)     Awarding damages for the Class on Counts I, III, IV, and V including actual and compensatory damages for appraisal costs, negatively impacted credit scores, the denial of the full bargained-for benefits of the HELOCs, the increased cost of credit, appraisal fees, lost interest, and other damages in an amount to be determined at trial;

(e)     Awarding equitable and injunctive relief for the Class, including enjoining Defendant from further violations of TILA and Regulation Z, restoration of the HELOC limits, the restitution of property gained through unfair and deceptive business practices alleged herein, and an accounting of such property;

(f)     Awarding Plaintiff and the Class reasonable costs and attorneys' fees;

(g)     Awarding pre- and post-judgment interest;

(h)     Awarding punitive damages; and

(i)     Granting such other and further relief as the Court may deem just and proper.

### Jury Trial Demand

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: May 19, 2010

Respectfully submitted,

MICHAEL HICKMAN, individually and on behalf of a class of similarly situated individuals

By: /s/ Evan M. Meyers
       One of His Attorneys

Jay Edelson
Steven Lezell
Evan M. Meyers
Irina Slavina
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Tel:  (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
slezell@edelson.com
emeyers@edelson.com
islavina@edelson.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2010, I electronically filed the foregoing *Second Amended Class Action Complaint* with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the following parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system:

Thomas J. Cunningham
John F. Kloecker
Simon Fleischmann
Sally W. Mimms
Julia C. Webb
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606
tcunningham@lockelord.com
jkloecker@lockelord.com
sfleischmann@lockelord.com
smimms@lockelord.com
jwebb@lockelord.com


Robert T. Mowrey
Locke Lord Bissel & Liddell LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201
rmowrey@lockelord.com


                                        /s/ Evan M. Meyers